**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

CASE NO.: 6:18-CV-1639-Orl-40DCI

RIVERSIDE APARTMENTS OF COCOA,
LLC F/K/A RIVERSIDE APARTMENTS
LIMITED, LLC, EQUITY OF AMERICA, INC.,
and EQUITY PLANNING CORPORATION,

Plaintiffs,

v.

LANDMARK AMERICAN INSURANCE
COMPANY D/B/A RSUI GROUP, INC.

Defendant.

_____/

## DEFENDANT'S OMNIBUS MOTION FOR PARTIAL SUMMARY JUDGMENT, AND INCORPORATED MEMORANDUM OF LAW

COMES NOW the Defendant, LANDMARK AMERICAN INSURANCE COMPANY

("LANDMARK"), by and through its undersigned attorneys, pursuant to the Federal Rule of Civil

Procedure 56(c), hereby files its Motion for Partial Summary Judgment and Incorporated

Memorandum of Law, ruling that (1) Plaintiffs', RIVERSIDE APARTMENTS OF COCOA, LLC

F/K/A RIVERSIDE APARTMENTS LIMITED, LLC, EQUITY OF AMERICA, INC., and

EQUITY PLANNING CORPORATION ("RIVERSIDE"), claim for Business Income/Rental

Value is Limited by the Policy; (2) RIVERSIDE's claim for lost business opportunity is not

recoverable as a matter of law; (3) RIVERSIDE is precluded from recovering damages on a

replacement cost basis; (4) RIVERSIDE is precluded from recovering for the increased cost of

construction; (5) RIVERSIDE is precluded from recovering for the cost associated with replacing

the Building C Roof; (6) LANDMARK is entitled to summary judgment pertaining to

RIVERSIDE's claim of breach of contract due to the nonrenewal of the policy; and that (7) RIVERSIDE cannot recover attorney's fees pursuant to Section 626.9373, Fla. Stat.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      LANDMARK, a Florida Surplus Lines Carrier, issued a Commercial Policy to Riverside Apartments Limited Cocoa, FL, for the property located at 650 Dixon Blvd, Cocoa, FL 32922, for the policy period December 9 2015 to December 9, 2016, identified by Policy No. LHD394817 ("the Policy"). (Policy, Forms, RSG 99064 0106, pg. 1 of 1; RSG 40011 0913, pg. 1 of 2.)[1]  The insured property consists of four buildings with 52 total rental apartment units contained in three of the buildings.  Building "A" contains 18 rental units; Building "B" contains 9 rental units; Building "C" contains 25 rental units; and Building "D" is a storage/laundry room (with no rental units). (Policy, Form RSG 40001 1203, pg. 1 of 1.)[2] The policy contains a 5% named storm deductible, which applies separately to each building. (Policy, Form RSG 94068 0714, pg. 1 of 6.)

2.      The negotiations for the Policy began on October 30, 2015, when RIVERSIDE's wholesale broker, TC Canterna ("Mr. Canterna") requested a policy for the subject property from LANDMARK's underwriter Zhanna Seglie ("Ms. Seglie").[3]  During this process, Mr. Canterna was located in Ohio, and LANDMARK's underwriters were located in Atlanta, Georgia.[4]

---

[1] A certified copy of the Policy is attached hereto as **Exhibit "A."**  To be clear, Buildings 1 through 4 at Premises 1, correspond with their order in the alphabet.  Thus, Building 1 is Building A, Building 2 is Building B, Building 3 is Building C, and Building 4 is Building D.  *Deposition of Bonnie Reinberg*, P. 113:21-114:14.  The full transcript of Ms. Reinberg's Deposition, and all exhibits attached thereto are collectively attached here as **Exhibit "B."**  The coverage limits and applicable deductibles for each building are as follows: **Building A**: $576,000.00, Building; $27,000.00, Personal Property; and $122,700.00, Rental Value; $14,700.00, Deductible.  **Building B**: $294,000.00, Building; $13,500.00, Personal Property; and $61,300.00, Rental Value; $294,000.00, Deductible.  **Building C**: $709,000.00, Building; $37,500.00, Personal Property; and $162,600.00, Rental Value; $35,450.00, Deductible. **Building D**: $21,000.00, Building; $2,000.00, Personal Property; $1,050.00, Deductible. (Policy, Form RSG 40001 1203, pg. 1 of 1.)

[2] *Deposition of Bonnie Reinberg*, P. 35:13-36:1-16.

[3] *Deposition of Zhanna Seglie*, P. 18:6-10; 100:14-25, Exhibit 1 to Deposition, p. 211.  A copy of the transcript of Ms. Seglie's Deposition, and all exhibits, are attached hereto as **Exhibit "C."**

[4] *Deposition of Zhanna Seglie*, P. 100:14-25; 101:1-3.

3.      The finalized version of the policy was approved by Ms. Seglie and Jill Hartl, both located in Atlanta, Georgia.[5]

4.      On November 4, 2015, Ms. Seglie provided to Mr. Canterna the quote via email for what would ultimately become RIVERSIDE's commercial policy.[6]  On December 9, 2015, Mr. Canterna, in Ohio, emailed Ms. Seglie, in Atlanta, Georgia, requesting that she, ". . . bind coverage per your most recent quote at 7.5 percent."[7]  Later that day, Ms. Seglie, while in Atlanta, Georgia, emailed Mr. Canterna, located in Ohio, attaching the binder.[8]  Accordingly coverage was bound on December 9, 2015.

5.      On January 11, 2016, Ms. Hartl, while in Atlanta, Georgia, emailed a copy of the policy to Mr. Canterna, located in Ohio.[9]  All communication from Ms. Seglie and Ms. Hartl took place in Atlanta, Georgia.[10]  All communication from Mr. Canterna took place in Ohio.[11]

6.      On October 31, 2016, Ms. Hartl emailed Mr. Canterna to inform him that the subject Policy will not be renewed.[12] Attached to the email was: (i) the Notice of Nonrenewal explaining that the reasons for nonrenewal were underwriting reasons;[13] and (ii) Endorsement #2 extending the Policy to December 19, 2016 to ensure the correct number of days under the Policy[14] for advance notice for the nonrenewal.[15]

7.      Prior to the loss, RIVERSIDE contracted with G&G Roofing Construction, Inc. to

---

[5] *Deposition of Zhanna Seglie*, P. 101:22-25; 102:1-17.  Jill Hartl is the underwriting assistant for Ms. Seglie.  P. 46:15-21.
[6] *Deposition of Zhanna Seglie*, P. 101:7-12.
[7] *Deposition of Zhanna Seglie*, P. 54:14-23, Exhibit 1 to Deposition, pg. 18.
[8] *Deposition of Zhanna Seglie*, P. 101:13-21, Exhibit 1 to Deposition, pgs. 10, 18.
[9] *Deposition of Zhanna Seglie*, P. 102:20-25, Exhibit 1 to Deposition, pg. 8.
[10] *Deposition of Zhanna Seglie*, P. 103:12-14.
[11] *Deposition of Zhanna Seglie*, P. 103:15-17.
[12] Exhibit 2 to *Deposition of Zhanna Seglie*, UW FILE-000002.
[13] Ex. 2 to Dep. of Zhanna Seglie at UW FILE-000002, UW FILE-000110-000116; 000114.
[14] Policy, Form # RSG 93041 0110.
[15] Ex. 2 to Dep. of Zhanna Seglie at UW FILE-000002, UW FILE-000117-000118.

perform roof repairs to Buildings A, B, & C and replace the roof to Building C.[16]  The replacement

of the Building C roof was required due to leaking issues from the roof into Building C.[17]

8.      According to Plaintiffs' corporate representative, as well as Mr. Flickenger of G&G

Roofing, a portion of the replacement of the Building C roof was completed at the time Hurricane

Matthew affected the insured property.[18]   None of the portion of the Building C roof that was

replaced by G&G Roofing prior to Hurricane Matthew was damaged as a result of the storm.[19]

9.      The roof replacement to Building C was completed after the date of loss.[20] As part

of its claim adjustment, LANDMARK made the decision to pay for a portion of the roof

replacement to Building C.[21]

10.      On March 10, 2017, Jansen Adjusters, Plaintiff's public adjuster, provided Engle

Martin and LANDMARK four Sworn Statements in Proof of Loss and corresponding estimates in

support.[22]   The amount sought by RIVERSIDE for Building C, included repairs totaling

$786,732.24, and a business income claim of $294,415.00 with a period of restoration of eighteen

months.[23]

11.      On November 15, 2019, RIVERSIDE served LANDMARK with its Expert

Disclosures, disclosing Gerald Zadikoff, PE of G.M. Selby, Inc., and John D. Sincore, CPA, of

JDS Forensics, LLC.

---

[16] *Deposition of Bonnie Reinberg*, P. 47:15-25, 48: 1, Exhibits 10 and 13 attached thereto.

[17] *Deposition of Bonnie Reinberg*, P: 46:13-47:14.  On September 27, 2016, Mr. Flickenger, of G&G Roofing documented the leaking issues so that his company would not be asked to repair damage that pre-existed the roof replacement.  *Deposition of Mark Flickenger*, P: 24:24–31:10, Deposition Exhibit 2, pp. 13-24. The full transcript of Mr. Flickenger's Deposition, and all exhibits attached thereto are collectively attached here as **Exhibit "D."**

[18] *Deposition of Bonnie Reinberg*, P. 44:25–45:02; 50:1-4; *Deposition of Mark Flickenger*, P: 46:11–47:04.

[19] *Deposition of Bonnie Reinberg*, P: 58:09–59:07; *Deposition of Mark Flickenger*, P: 47:13–48:03.

[20] *Deposition of Mark Flickenger*, P: 87:18–88:16; *Deposition of Bonnie Reinberg*, P: 45:1-2; 46:7-12.

[21] *Deposition of Bonnie Reinberg*, P: 48:02-07; 51:06-25; *Deposition of Jonna Holm*, Vol. 1, P. 72:8-14. The full transcript of Ms. Holm's Deposition, and all exhibits attached thereto are collectively attached here as **Exhibit "E."** December 22, 2016, Correspondence attached hereto as **Exhibit "F"** (LANDMARK issued a check in the amount of $21,141.98, for the G&G Invoices).

[22] *Deposition of Jonna Holm*, Exhibit 28, attached thereto.

[23] *Id.*

12.     Mr. Sincore, testified that the Lost Business Opportunity and Loss of Business Income claims are separate and distinct claims, due to the fact that the Loss of Business Opportunity claim is consequential loss arising from the breach of contract action.[24]

13.     The business income/rental value claim seeks to recover the value of the rent RIVERSIDE claims it was unable to collect from the units damaged by Hurricane Matthew.[25]  The claim for the Lost Business Opportunity seeks to recover the post-renovation value of the property RIVERSIDE would have realized had LANDMARK provided the requested amount of coverage for RIVERSIDE to complete the repairs to the entire property; and had RIVERSIDE sold the property after making those repairs despite the property not being advertised for sale either before or after the date of loss and there not ever being an independent offer to buy the property.[26]

14.     As of November 25, 2019, Plaintiff's damages totaled $4,123,429.42.[27]

15.     To date, LANDMARK has paid a total of $46,305.00 for RIVERSIDE's business interruption claim,[28] and has paid $483,430.89 in property damage coverage.

## ARGUMENT AND MEMORANDUM OF LAW

### I.     Legal Standard.

Under Federal Rule of Civil Procedure 56, summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

---

[24] *Deposition of John Sincore*, P. 38:3-11; 47:22-25; 48:1-21; Exhibit 2 thereto to, John D. Sincore, CPA, JDS Forensics, LLC, Business Income Loss Report ("*Sincore, Lost Business Income Report*"), and Exhibit 3 attached thereto, John D. Sincore, CPA, JDS Forensics, LLC, Business Opportunity Loss Report ("*Sincore, Lost Business Opportunity Report*").  The deposition Transcript of John Sincore and all exhibits included therein are attached hereto as **Exhibit "G."**  The first time RIVERSIDE has raised the issue of a lost business opportunity or its desire for coverage for the same was in Mr. Sincore's *Lost Business Opportunity Report*.  RIVERSIDE never raised this issue in any of the iterations of its complaint.
[25] *Sincore, Lost Business Income Report*.
[26] *Sincore, Lost Business Opportunity Report*.
[27] *See* Plaintiff's November 25, 2019, Damages Analysis and accompanying correspondence, attached hereto as **Exhibit "H."**
[28] *Deposition of Jonna Holm*, Vol. 2, P. 217:13-17.

show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), (quoting Fed. R. Civ. P. 56(c)[29]). The moving party bears the initial burden of establishing the basis for its motion by identifying record evidence demonstrating the absence of a genuine dispute of material fact and supporting judgment in its favor as a matter of law. *Id.* at 323.

When the moving party has met its burden, the nonmoving party must present "specific facts showing that there is a *genuine issue for trial*." *St. Paul Fire & Marine Ins. Co. v. Luke Ready Air, LLC*, 880 F.Supp. 1299, 1304 (S.D. Fla. 2012) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing Fed. Rule Civ. Proc. 56(e))). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* "[A] mere 'scintilla' of evidence" is not sufficient to overcome the burden of proof established by the moving party. *Id.* (citing *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir. 1990)).

## II.    The Policy was Bound in Georgia, thus Georgia Law Governs the Instant Action.

In a diversity action, a federal court must apply the choice-of-law rules of the forum state. *Pierce,* 303 F. Supp. 3d at 1303 (citing *Travelers Prop. Cas. Co. of Am. v. Kan. City Landsmen, L.L.C.,* 592 F. App'x 876, 881 (11th Cir. 2015)). The Policies are insurance contracts. "In Florida, the rights and obligations of the parties under an insurance policy are governed by contract law, because they arise out of an insurance contract." *Pierce,* 303 F. Supp. 3d at 1304 (citing

---

[29] The Federal Rule of Civil Procedure 56 was amended in 2010 so the former section (c) is now section (a), but the standard remains the same. *See* Fed.R.Civ.P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."); Fed.R.Civ.P. 56 advisory committee's note for 2010 amendments ("The standard for granting summary judgment remains unchanged.").

*Lumbermens Mut. Cas. Co. v. August,* 530 So. 2d 293, 295 (Fla. 1988)).  It is well settled that "Florida adheres to the rule of *lex loci contractus,* which provides that 'the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties in determining an issue of insurance coverage[.]'" *Scott, Blane, & Darren Recovery, LLC v. Auto-Owners Ins. Co.,* 727 F. App'x 625, 631 (11th Cir. 2018) (quoting *State Farm Mutual Auto. Ins. Co. v. Roach,* 945 So. 2d 1160, 1163 (Fla. 2006)).

"Execution of an insurance contract occurs in the place where 'the last act necessary to complete the contract is performed.'" *Scott, Blane, & Darren,* 727 F. App'x at 631 (quoting *Colhoun v. Greyhound Lines, Inc.,* 265 So. 2d 18, 21 (Fla. 1972)).  The last act necessary for the formation of an insurance contract is "'an insurer's (or its agent's) communication of acceptance of the insured's (or its agent's) offer to purchase insurance,' by issuing a temporary 'binder.'" *Wausau Underwriters Ins. Co. v. Danfoss, LLC,* No. 2:14-CV-14420, 2015 WL 6456569, at *8 (S.D. Fla. Oct. 26, 2015); *accord Prime Ins. Syndicate, Inc. v. B.J. Handley Trucking, Inc.,* 363 F.3d 1089, 1093 (11th Cir. 2004) (the insurer's "communication of the oral binder to [the insured] constituted acceptance of [the insured's] offer to purchase insurance and, therefore, was the last act necessary to complete the contract").  The critical location for *lexi loci contractus* in Florida is the place from where the acceptance and binder are "dispatched." *Sun Capital Partners, Inc. v. Twin City Fire Ins. Co., Inc.,* No. 12-CV-81397-KAM, 2015 WL 4648617, at *4 (S.D. Fla. Aug. 5, 2015) (citing *The Celotex Corp. v. AIU Ins. Co.,* 194 B.R. 668, 673 (Bankr. M.D. Fla. 1996)).

In *Sun Capital,* the Court found that the law of New York, not Florida, governed an insurance contract dispute, because the subject insurance binder was dispatched from an office in New York. 2015 WL 4648617, at *4.  The Court explained in *Sun Capital,* as follows:

> First, [the insured's] agent, Marsh Inc., emailed the insurer's agent an offer to purchase insurance by submitting a "formal order to bind coverage." Next, the

insurer's agent accepted that offer and issued a binder for coverage from an office in New York. This acceptance was effective at the time—and at the place—where it was dispatched, i.e., New York. The insurer's agent's acceptance of Plaintiff's agent's offer to purchase insurance was the last act necessary to complete the insurance contract. The fact that only binders were initially exchanged, and not the actual policies, does not alter the conclusion that Plaintiff's agent offered to purchase insurance coverage, specifying the terms of the policy, and the insurer's agent issued an acceptance based on those terms.

*Id.* (citations and footnotes omitted); *see also Granite State Ins. Co. v. Am. Bldg. Materials, Inc.,* No. 8:10-cv-1542-T-24-EAJ, 2011 WL 6025655, at *4–5 (M.D. Fla. Dec. 5, 2011) (finding Massachusetts law governed where "the binder (and later the policy) were generated, issued and sent from the insurer's underwriter in Massachusetts.  Thus, Massachusetts is where the last act necessary to form the policies occurred.").

In *Granite State,* the court was essentially asked by the parties to determine whether Massachusetts or Florida law applied to a particular insurance contract dispute.  *See* 2011 WL 6025655, at *3.  There were three successive insurance policies at issue in that case, and the evidence was undisputed that the binders (and policies) were all issued by the insurer in Massachusetts.  *Id.* at *1, *4–5.  It was similarly undisputed that the binders were issued to a Florida corporation and were received in Florida, and that the underlying loss occurred in Florida. *Id.* at *1, *4.  In applying Florida's *lex loci contractus* analysis to those facts, the *Granite State* court held that the law of Massachusetts, not Florida, applied.  *Id.* at *7.

The *Granite State* court specifically made clear that, in this context, determining the state where the binder was ultimately received (in that case Florida) was irrelevant to the *lex loci contractus* analysis.  *Id.*  The court graphically illustrated that proposition by pointing to *CNL Hotels & Resorts v. Houston Casualty,* 505 F. Supp. 1317 (M.D. Fla. 2007):

*CNL Hotels & Resorts, Inc. v. Houston Casualty Co.,* 505 F.Supp.2d 1317 (M.D. Fla. 2007), also does not support the Insurer's contention that the insured's receipt of the binder is what constitutes the final act necessary to form the contract.  In

> *CNL,* the insured argued that Florida law applied, while the insurer argued that New York law applied. *Id.* at 1320.  In applying the *lex loci contractus* doctrine, the court found that the following facts were not relevant: 1) that the policy was delivered to the insured in Florida; 2) that the insured's principal place of business was in Florida; 3) that the insurer was licensed in Florida; 4) that the policy contained riders specific to Florida; and 5) that taxes were paid on the premiums in Florida. *Id.* The district court specifically rejected the insurer's argument that Florida law should apply because the policy was issued to a Florida company in Florida.  *Id.*  at 1321.
>
> Instead, the facts that the court did find relevant were the following: 1) that coverage took effect when an authorized agent issued a binder; 2) that the binder was issued from the agent's office in New York; and 3) that the policy was signed in New York and delivered to the insured's agent in New York. *Id.* The court ultimately determined that New York law applied because both the issuance and delivery of the binder and the policy occurred in New York, not Florida. *Id.* In reaching this conclusion, the court noted, that "the important factor is the place of execution of the contract, not the place or places to which it was (eventually) mailed." *Id.* at 1320-21. Thus, *CNL* actually supports KB Home's contention that Massachusetts law governs the interpretation of the policies here.

*Granite State,* 2011 WL 6025655, at *6.

This exact same analysis mandates the application of Georgia law in the instant case.  Ms. Seglie, along with her underwriting assistant, Ms. Hartl, worked from a LANDMARK office located in Atlanta, Georgia,  all the while, Mr. Canterna was located in Ohio.[30]  On November 4, 2015, LANDMARK's underwriter attached the quote for what would ultimately become RIVERSIDE's commercial policy.[31]  On December 9, 2015, Mr. Canterna, in Ohio, emailed Ms. Seglie, in Atlanta, Georgia, requesting that she, please bind coverage.[32]  Ms. Seglie replied that same day thanking him for the order and provided the binder in an attachment to that email.[33] Because the policy was bound in, issued, and later sent from Georgia, Georgia law governs the instant dispute.  This is because the last acts necessary to complete the contract for insurance took

---

[30] *Infra.* ¶¶ 2-5.
[31] *Id.*
[32] *Id.*
[33] *Deposition of Zhanna Seglie*, P. 101:13-21.

place when LANDMARK's underwriter, located in Georgia, communicated acceptance of the insureds' agent's offer to purchase insurance by issuing temporary binders in Georgia.  Per Florida's interpretation of *lex loci contractus*, Georgia law governs this dispute.  *Sun Capital Partners,* 2015 WL 4648617, at *4; *Scott, Blane, & Darren,* 727 F. App'x at 631; *Granite State,* 2011 WL 6025655, at *4–5.

### III.  Interpretation of an Insurance Policy is a Legal Issue for the Court.

The interpretation of an insurance contract is a matter of law to be decided by the court. *Evanston Ins. Co. v. Xytex Tissue Servs., LLC*, 378 F. Supp. 3d 1267, 1284 (S.D. Ga. 2019), appeal dismissed, No. 19-11368-JJ, 2020 WL 1873216 (11th Cir. Mar. 6, 2020); *Jones v. Utica Mut. Ins. Co.,* 463 So. 2d 1153, 1157 (Fla. 1985).  "Where the duty of an insurer rests upon the legal effect of the provisions of an insurance policy, the interpretation of the policy is a matter of law for the Court to determine, and is therefore amenable to summary judgment."  *Great Am. Fid. Ins. Co. v. JWR Constr. Servs., Inc.,* No. 10-61423-CIV, 2012 WL 1193848 (S.D. Fla. April 9, 2012).

In interpreting contracts pursuant to Georgia law, courts are directed to follow well-established principles of contract interpretation.  *Arrow Exterminators, Inc. v. Zurich Am. Ins. Co.*, 136 F. Supp. 2d 1340, 1348 (N.D. Ga. 2001) (citing *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.,* 269 Ga. 326, 328 (1998)).  "Where the terms are clear and unambiguous, and capable of only one reasonable interpretation, the court is to look to the contract alone to ascertain the parties' intent."  *Id.*  In ascertaining the parties' intention, a court must "'consider the insurance policy as a whole' and seek a construction that 'will give effect to each provision, attempt to harmonize the provisions with each other, and not render any of the policy provisions meaningless or mere surplusage.'"  *Ace Am. Ins. Co. v. Wattles Co.*, 930 F.3d 1240, 1253-54 (11th Cir. 2019) (applying

Georgia law) (citation omitted).   Any exclusion from coverage is strictly construed. *Arrow*

*Exterminators,* 136 F. Supp. 2d at 1348 (citations omitted).

## IV.    RIVERSIDE's Recovery for Business Income/Rental Value is Limited by the Policy.

LANDMARK is entitled to partial summary judgment on RIVERSIDE's claim for

business income/rental value as that claim exceeds the policy limit applicable to business

income/rental value for the building involved.  The following policy provisions control the manner

in which RIVERSIDE may be entitled to coverage for a loss of Business Income.

### BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM

* * *

**A. Coverage**

**1. Business Income**

Business Income means the:

**a.**  Net Income (Net Profit or Loss before in-come taxes) that would have
been earned or incurred; and

**b.**  Continuing normal operating expenses incurred, including payroll.

(Policy, Form CP 00 32 06 07, pg. 1 of 9.)

Coverage is provided as described and limited below for one or more of the
following options for which a Limit of Insurance is shown in the
Declarations:

**(1)** Business Income Including "Rental Value".

**(2)** Business Income Other Than "Rental Value".

**(3)** "Rental Value".

If option **(1)** above is selected, the term Business Income will include
"Rental Value". If option **(3)** above is selected, the term Business Income
will mean "Rental Value" only.

If Limits of Insurance are shown under more than one of the above options,
the provisions of this Coverage Part apply separately to each.

We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. . . .

(Policy, Form CP 00 32 06 07, pg. 1 of 9.)

### F. Definitions

(Policy, Form CP 00 32 06 07, pgs. 8-9, of 9.)

**5.** "Rental Value" means Business Income that consists of:

**a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the described premises which is occupied by you; and

**b.** Continuing normal operating expenses incurred in connection with that premises, including:

**(1)** Payroll; and

**(2)** The amount of charges which are the legal obligation of the tenant(s) but would otherwise be your obligations.

(Policy, Form CP 00 32 06 07, pgs. 9, of 9.)

The applicable Business Income coverage is provided in form CP 0032 06 07 entitled Business Income (without Extra Expense) Coverage Form.  The form provides the Limit of Insurance for this coverage is shown in the Declarations and provides as follows:

### B. Limits Of Insurance

The most we will pay for loss in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

(Policy, Form CP 00 32 06 07, pg. 4 of 9.)

The Commercial Property Coverage Part Declarations identifies the Coverages provided for Prem. No.1 Building 3 and states as follows:

**COVERAGES PROVIDED** – Insurance at the described premises applies only for coverages for which a limit of insurance is shown.

| Prem. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Cause of Loss | Coinsurance | Rates |
|---|---|---|---|---|---|---|
| 1 | 3 | Building | $709,000 | Special | 90% | Included |
| 1 | 3 | Personal Property | $37,500 | Special | 90% | Included |
| 1 | 3 | Rental Value | $162,600 | Special | 90% | Included |

(Policy, Form RSG 40001 1203, pg. 1 of 1 (edited from original format))

It is undisputed that RIVERSIDE seeks coverage for business income/rental value losses for Prem. No. 1 Building 3.  The policy limits business income/rental value losses on this building to $162,600.00.  It is undisputed that LANDMARK has already paid $46,305.00[34] towards RIVERSIDE's business income/rental value claim, thereby leaving $116,295.00, in coverage left. Recovery under an insurance policy cannot exceed the amount for which the property is insured. *Durden v. State Farm Fire & Cas. Co.*, 238 F. Supp. 3d 1370, 1378 (N.D. Ga. 2017) (citing *Donaldson v. Pilot Life Ins. Co.*, 177 Ga.App. 748, 341 S.E.2d 279, 280 (1986) ("Where the language fixing the extent of coverage is unambiguous . . . and but one reasonable construction is possible, this court must enforce the contract as written.")  *See also* § 175:11. Express monetary limit, generally, 12 Couch on Ins. § 175:11.  Thus, LANDMARK requests partial summary judgment concluding that the most that is recoverable under RIVERSIDE's Business Income/Rental Value Claim for Premise 1, Location 3, is $116,295.00.

---

[34] *Infra.* ⁋ 15.

**V.    RIVERSIDE's Claim for Lost Business Opportunity is Not Recoverable as a Matter of Law because such a Loss is Not Business Income as Contemplated by the Policy and is Otherwise Excluded under the Policy**

LANDMARK does not dispute that various units within Building C of RIVERSIDE's property were damaged by Hurricane Matthew.  However, RIVERSIDE is not entitled to coverage for a Lost Business Opportunity because (1) such a loss is not business income coverage contemplated by the policy; (2) the loss alleged is "consequential" and specifically excluded by the policy; and (3) the alleged loss exceeds the only potentially applicable policy coverage limit. Accordingly, LANDMARK is entitled to summary judgment on this issue, and/or partial summary judgment related to the policy limit.

The property insured under the Policy is described in the declarations page as an apartment complex.[35]  The Policy provides three kinds of coverage, Building, Personal Property, and Rental Value to Premises 1 Building 3.[36]   A lost business opportunity is neither a loss to the building nor a loss to the personal property contained therein.  Additionally, Rental Value in the context of the Policy is defined as Business Income derived from collected rent at the subject property and expenses.[37]  The inability to realize the income of a failed hypothetical sale is not contemplated by the clear and unambiguous terms of the Policy.  Thus, LANDMARK is entitled to partial summary judgment as there is no genuine issue of material fact that such an intangible loss is not covered under the policy.

Additionally, RIVERSIDE is not entitled to Coverage for a Lost Business Opportunity as it is excluded pursuant to the "consequential loss" exclusion, stated as follows:

---

[35] *See* Policy, Common Policy Declarations (Policy, Form RSG 40001 1203, pg. 1 of 1.).
[36] *See* Policy, Common Policy Declarations (Policy, Form RSG 40001 1203, pg. 1 of 1.).
[37] *See* Policy, Business Income (Without Extra Expense) (Policy, Coverage Form CP 00 32 06 07, pgs. 8-9 of 9.)

## CAUSES OF LOSS - SPECIAL FORM

**B. Exclusions**

(Policy, Form CP 10 30 06 07, pg. 1 of 10.)

**4. Special Exclusions**

The following provisions apply only to the specified Coverage Forms.

**a. Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, Or Extra Expense Coverage Form**

We will not pay for:

(Policy, Form CP 10 30 06 07, pg. 4 of 10.)

**(5)** Any other consequential loss.

(Policy, Form CP 10 30 06 07, pg. 5 of 10.)

Mr. Sincore, RIVERSIDE's expert, testified that the Lost Business Opportunity and Loss of Business Income claims are separate and distinct claims.[38]  And significantly, Mr. Sincore conceded that the Loss of Business Opportunity claim is consequential loss arising from the breach of contract action.[39]  This admission is fatal to RIVERSIDE's claim for Lost Business Opportunity. As the Policy unequivocally states that any consequential loss is excluded from the calculation of business income, and Plaintiffs' expert has conceded that the loss is a consequential loss, LANDMARK is entitled to Summary Judgment for the Lost Business Opportunity claim.

The loss exceeds any potential limit, even if such a loss was to be considered rental value. The limit of liability for Rental Value to Building C is $162,600.00.[40]  Moreover, LANDMARK has already paid $46,305.00, towards RIVERSIDE's business income/rental value claim, leaving

---

[38] *Infra.* ¶ 12.
[39] *Infra.* ¶ 12.
[40] *See* Policy, Common Policy Declarations (Policy, Form RSG 40001 1203, pg. 1 of 1.).

only $116,295.00, in coverage left.[41]  As with RIVERSIDE's claim for lost rent, LANDMARK is entitled to partial summary judgment that RIVERSIDE cannot recover more than the balance of $116,295.00, in Rental Value Coverage for Building C.

**VI.  LANDMARK is entitled to Partial Summary Judgment as RIVERSIDE is Precluded from Recovering Damages on a Replacement Cost Basis, and is *only* Entitled to Pursue the Actual Cash Value of Unrepaired Damage**

LANDMARK is entitled to Partial Summary Judgment on Count II of RIVERSIDE's Third Amended Complaint as pled.  The Valuation provision in the Policy provides that the value of Covered Property in the event of loss or damage is the actual cash value.  However, replacement Cost coverage is also provided within the Policy, but only if certain requirements are met.  The Policy provides, in pertinent part:

**3. Replacement Cost**

(CP 00 10 06 07, pg. 14 of 15.)

**d.** We will not pay on a replacement cost basis for any loss or damage:

**(1)** Until the lost or damaged property is actually repaired or replaced; and

**(2)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage. . . .

(CP 00 10 06 07, pg. 14 of 15.)

Replacement cost is measured by what it would cost to replace the damaged structure on the same premises.  *NUCO Investments, Inc. v. Hartford Fire Ins. Co.*, 2005 WL 3307089, at *3 (N.D. Ga. Dec. 5, 2005); *see also Davis v. Allstate Ins. Co.*, 781 So.2d 1143, 1144 (Fla. 3d DCA 2001).  Actual cash value is synonymous with market value or fair market value.  *See Yarbrough v. Shelby Ins. Co.*, 991 F. Supp. 1476 (M.D. Ga. 1998); *see also Am. Reliance Ins. Co. v. Perez*,

---

[41] *Infra.* ⁋ 15.

689 So. 2d 290, 291 (Fla. 3d DCA 1997); *Goff v. State Farm Fla. Ins. Co.*, 999 So. 2d 684, 689 (Fla. 2d DCA 2008) ("Fair market value accounts for the property's depreciated condition.").

Under a replacement cost policy, "following a loss, both actual cash value and the full replacement cost are determined.  The difference between those figures is withheld as depreciation until the insured actually repairs or replaces the damaged structure."  *Goff*, 999 So. 2d at 690. Courts have recognized that these types of contractual provisions are both common and valid. *Marchman v. Grange Mut. Ins. Co.*, 232 Ga. App. 481, 483 (1998); *Fla. Ins. Guar. Ass'n v. Somerset Homeowners Ass'n, Inc.*, 83 So. 3d 850, 852 (Fla. 4th DCA 2011); *Palm Bay Yacht Club Condo. Ass'n, Inc. v. QBE Ins. Corp.,* No. 10-23685-CIV, 2012 WL 13012457 *5 (S.D. Fla. May 8, 2012) ("where repairs have yet to occur, the policy by its plain language does not afford replacement-cost-value coverage.")

It is undisputed that portions of RIVERSIDE's claim seeks payment for loss or damage to the Property that has not been actually repaired or replaced. To recover replacement cost, RIVERSIDE was required to repair or replace the damaged property and do so as soon as reasonably possible after the loss.  Under no circumstances can a period of almost four years after the loss constitute, "as soon as reasonably possible after the loss or damage."  Therefore, the value of any repairs at this point are limited to actual cash value as, RIVERSIDE is now precluded from obtaining replacement cost coverage as a matter of law.  *Marchman* at 483 (holding that policy terms requiring "actual repair of replacement" was a condition precedent to replacement cost coverage, where insured had not repaired the insured premises, insured was not entitled to replacement cost coverage and only entitled to actual cash value); s*ee Oriole Gardens Condo. Ass'n I, v. Aspen Specialty Ins. Co.*, 875 F. Supp.2d 1379, 1384-85 (S.D. Fla. 2012) (granting summary judgment to insurer precluding recovery for replacement cost, as a result of the insured's

failure to repair or replace the property).  Accordingly, any recovery by RIVERSIDE for repairs not performed prior to suit is limited to actual cash value.  *See Corat Int'l, Inc. v. Taylor*, 462 So.2d 1186, 1187 (Fla. 3d DCA 1985).[42]  Moreover, RIVERSIDE cannot recover more than the applicable policy limits for each building.[43]

## VII.    Plaintiff is Precluded from Recovering Increased Cost of Construction Damages

The Increased Cost of Construction provision contained within the Policy provides, in pertinent part:

### 4. Additional Coverages

(CP 00 10 06 07, pg. 3 of 15.)

### e.   Increased Cost Of Construction

* * *

(2) In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased cost incurred to comply with enforcement of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in **e.(3)** through **e.(9)** of this Additional Coverage.

(CP 00 10 06 07, pg. 4 of 15.)

(7) With respect to this Additional Coverage:

(a) We will not pay for the Increased Cost of Construction:

---

[42] Indeed, LANDMARK can only be liable, and RIVERSIDE can only be entitled to the value of those repairs RIVERSIDE performed prior to the date of suit, i.e., October 4, 2017.  *See Nickerson v. Candler Bldg., Inc.*, 274 S.E.2d 582, 585 (Ga. Ct. App. 1980)("It is a well-settled principle that a plaintiff cannot recover unless there exists at the time of the filing of the suit a cause of action. A cause of action arising pending the suit will not entitle the plaintiff to recover. … The status of a suit becomes fixed at the time the action is instituted, and therefore, when there is no cause of action at the commencement of the suit, there can be no recovery, although one may accrue respecting the same subject-matter while the suit is pending.") (citations and internal quotations omitted); *see also Deas v. Sammons*, 126 Ga. 431, 55 S.E. 170, 170 (Ga. 1906) ("The general rule is that there can be no recovery unless the plaintiff had a complete cause of action at the time the suit is filed. A cause of action accruing pending the suit will not entitle the plaintiff to recover."); *Orlando Sports Stadium, Inc. v. Sentinel Star Co.*, 316 So. 2d 607, 610 (Fla. 4th DCA 1975) (the existence or non-existence of a cause of action is commonly dependent upon the state of facts existing when the action began, and plaintiff may not be permitted to cure the defect of non-existence of a cause of action at the suit's inception, by amendment of the pleadings to cover those subsequently accruing rights).

[43] *Infra.* n.1.

> **(i)** Until the property is actually repaired or replaced, at the same or another premises; and
>
> **(ii)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

(CP 00 10 06 07, pg. 5 of 15.)

Courts have repeatedly enforced similar law and ordinance provisions. *See, e.g.*, *Buckley Towers Condo., Inc. v. QBE Ins. Corp.,* 395 F.App'x 659, 665 (11th Cir. 2010) (insured was "not entitled to law and ordinance damages as it never repaired the property or incurred increased damages due to the enforcement of laws or ordinances"); *Orleans Parrish School Board v. Lexington Ins. Co.,* 118 So. 3d 1203 (La. App. 4th Cir. 2013) (enforcing similar provision and holding that insured not entitled to recover increased cost of construction); *Edgewood Manor Apt. Homes LLC v. RSUI Indemnity Co*., 782 F.Supp.2d 716, 723, 729 (E.D.Wis.2011); *Snoqualmie Summit Inn, Inc. v. Travelers Prop. & Cas. Co. of America,* No. CV06-0517 MJP, 2007 WL 709297 (W.D.Wash. Mar. 5, 2007); *Monarch, Inc. v. St. Paul Property & Liability Ins. Co.*, No. A. 03-CV-0054, 2004 WL 1717618 (E.D.Pa. Jul. 30, 2004).

It is undisputed that the damages RIVERSIDE seeks in this case are for repairs that have not been performed to date. The foregoing provision prevents reimbursement under the Policy for Ordinance or Law Coverage if the repair or replacement is not performed within two years of the loss or damage. Again, almost four years have elapsed since the alleged loss or damage to the Property occurred. Accordingly, RIVERSIDE is now precluded from seeking Increased Cost of Construction coverage as a matter of law. *See Oriole Gardens*, 875 F. Supp.2d at 1385 (granting summary judgment to insurer precluding recovery for "increased costs of construction" (i.e., Ordinance or Law), as a result of the insured's failure to repair or replace the property).

## VIII.    RIVERSIDE is Precluded from Recovering for the Cost Associated with Replacing the Building C Roof.

It is undisputed that Plaintiffs had made the decision to replace the Building C Roof prior to Hurricane Matthew. Indeed, Plaintiffs had signed a contract for the roof replacement and the work was in progress. [44]  Nonetheless, Plaintiffs now seek the full value of the replacing the roof due to Hurricane Matthew.  But granting even a penny for such roof replacement would result in a windfall to Plaintiffs since they had already determined that the roof had no value and, thus, had become contractually liable for replacing the roof.  Accordingly, Plaintiffs are not entitled to recover for the replacement of the Building C roof and partial summary judgment should be entered in LANDMARK's favor.

Courts have held that an insured lacked a recoverable pecuniary interest where the property was in early stages of demolition. For example, in *Aetna State Bank v. Maryland Casualty Co.,* 345 F.Supp. 903 (N.D.Ill.1972) a borrower secured from Aetna sufficient funds to acquire a building. After insuring the building, without Aetna's knowledge the borrower entered into a contract to have the building demolished. Demolition had begun when the building was destroyed by fire, and coverage was denied. *Id.* at 904. On appeal, the *Aetna* Court held that actual cash value was not the proper criteria for determining the amount of loss for property which was in the process of being demolished and whose demolition at the time of loss was no longer a matter of conjecture or speculation and that there was no compensable loss because there was no value to buildings in the process of demolition. *Id.* at 909. Similarly here, RIVERSIDE has no recoverable pecuniary interest because the Building C roof was at the end of its life span and the process of replacing it

---

[44] *Infra.* ‖‖ 7-8.

had begun at the time of loss.  Accordingly, LANDMARK is entitled to Partial Summary Judgment

that RIVERSIDE is precluded from recovering for the cost associated with replacing the Building

C Roof.

## IX.   LANDMARK is Entitled to Summary Judgment Pertaining to RIVERSIDE's Claim of Breach of Contract Due to the Nonrenewal of the Policy.

In the operative Complaint, RIVERSIDE makes a one-paragraph claim that LANDMARK

"wrongfully and/or improperly cancelled and/or non-renewed Plaintiffs' Policy in breach of both

applicable Florida Statutes" and Policy conditions.[45]  First, it is undisputed that LANDMARK

complied with the terms of the insurance policy when a nonrenewal was issued.  As required by

the policy,[46] notice of 45 days was provided.[47]  In addition, LANDMARK specified that the policy

was not being renewed for underwriting reasons.[48]

Second, as set forth above, Florida substantive law does not apply.  Thus, any theoretical

violation of Florida statutes or law pertaining to nonrenewal is irrelevant.  However, even if this

Court were to find that Florida law applied, RIVERSIDE's claim for damages based on

nonrenewal still fails.  Section 627.4133(2)(d), Florida Statutes on which RIVERSIDE presumably

relies to support its claim that LANDMARK could not cancel or non-renew the Policy because the

Florida Governor had issued Executive Order # 16-230[49] (later extended by Emergency Order #

16-274[50]) declaring a state of emergency and thus triggered the applicability of section

627.4133(2)(d), does not apply to LANDMARK, a surplus lines insurance carrier. LANDMARK

is exempt from the provisions of Chapter 627, pursuant to section 626.913(4), Florida Statutes,

---

[45] Plaintiffs' Third Amended Complaint, DE 39 ¶ 49.
[46] Policy, Form # RSG 93041 0110.
[47] **Exhibit "C,"** *Deposition of Zhanna Seglie*, at 46:25-47:5; 50:1-51:17; Ex. 2 to Dep. of Zhanna Seglie at UW FILE-000002; UW FILE-000110-000118.
[48] **Exhibit "C,"** Ex. 2 to *Dep. of Zhanna Seglie*, UW FILE-000114.
[49] **Exhibit "E,"** Exhibit 42 to *Dep. of Joanna C. Holm*.
[50] **Exhibit "E,"** Exhibit 42 to *Dep. of Joanna C. Holm*.

which provides that "[e]xcept as may be specifically state to apply to surplus lines insurers, the provisions of chapter 627 do not apply to surplus lines insurance." *See Essex Ins. Co. v. Integrated Drainage Sols., Inc.*, 124 So. 3d 947 (Fla. 2d DCA 2013) (noting that the legislature expressly enacted section 626.913(4), Florida Statutes to declare that the provisions in chapter 627 did not apply to surplus lines carriers). Nothing in the language of section 627.4133 makes that provision applicable to surplus lines insurers and thus, it is inapplicable here. Furthermore, there is no corresponding emergency provision in section 626.9201, Florida Statutes, which governs the notice of cancellation or nonrenewal for surplus lines insurance carries.

Third, even assuming for the sake of argument that this provision applies to surplus lines carriers like LANDMARK, it does not create a private cause of action, nor does it provide for a penalty for its violation. The Florida Supreme court in *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*, 94 So. 3d 541, 550 (Fla. 2012) analyzed section 627.701(4)(a) to determine whether it creates a private cause of action for its violation. The court found that "[t]he plain language of the statute does not provide for either a private cause of action or a penalty for a violation of its requirements." *Id.* Thus, the Court went on to determine whether such private cause of action could be judicially implied, by addressing the legislative intent. *Id.* at 551. The court noted that the legislative history hardly ever mentioned that section. *Id.* The court also explained that the Legislature included penalties in other sections of the Insurance Code for violations of the statute, rendering void or invalid a policy provision in violation of a statutory provision. *Id.* at 552. Since no such provision was added to section 627.701, the court concluded that it could not provide a remedy when the Legislature failed to do so. *Id.* at 553. Here, like in *Chalfonte*, section 627.4133(2)(d) does not provide for a private cause of action and there is no penalty included for the violation of the notice provision. Nor does the legislative history provide any indication that

the Legislature intended to create such a private cause of action for non-compliance with this statutory requirement.

Fourth, and most importantly, even assuming for the sake of argument that RIVERSIDE could establish that LANDMARK's nonrenewal was contrary to the policy or law, RIVERSIDE has not (and cannot) establish any damages resulting from the nonrenewal.   RIVERSIDE's corporate representative testified that there was no gap in insurance coverage after the non-renewal.[51]   Moreover, when asked how RIVERSIDE was damaged as a result of the nonrenewal, RIVERSIDE's corporate representative testified that "I don't know if there was any damage."[52] When shown the allegation of breach due to nonrenewal in RIVERSIDE's operative Complaint, RIVERSIDE's corporate representative testified that she was unable to identify any specific damages as a result of the alleged breach due to nonrenewal.[53]

### X.   RIVERSIDE Cannot Recover Attorney's Fees Pursuant to Section 626.9373, Fla. Stat. as it does not apply to the Instant Action because the Policy was formed in Georgia.

RIVERSIDE has pled a claim for attorney's fees under Section 626.9373, Fla. Stat. in its Third Amended Complaint.   Attorney fees are determined by state law and are substantive for diversity purposes.  *McMahan v. Toto*, 256 F.3d 1120, 1132 (11th Cir. 2001), amended on reh'g, 311 F.3d 1077 (11th Cir. 2002); *see also All Underwriters v. Weisberg*, 222 F.3d 1309, 1311–12 (11th Cir.2000) (holding that Fla. Stat. § 627.428 allowing for recovery of attorneys' fees in

---

[51] **Exhibit "B,"** *Deposition of Bonnie Reinberg*, P: 107:01-11.
[52] **Exhibit "B,"** *Deposition of Bonnie Reinberg*, P: 108:09-11.
[53] **Exhibit "B,"** *Deposition of Bonnie Reinberg*, P: 111:18-25.   After a break in the deposition, Plaintiffs' corporate representative attempted to "clear up" her testimony on this issue by testifying that her counsel reminder her that there was $25,000 of "out-of-pocket" damages associated with Hurricane Irma and/or "some other damages on premiums and getting insured."  *Deposition of Bonnie Reinberg*, P: 118:12–119:23.   However, when pressed on the issue, Plaintiffs' corporate representative could not testify to any evidence or testimony in support of this blind assertion, ultimately admitting that "I do not know today."  *Deposition of Bonnie Reinberg*, P: 121:22–122:06.   It is undisputed that, to date, Plaintiffs have provided no evidence and/or testimony from their experts establishing damages as a result of the non-renewal.

insurance actions is substantive); *Bitterman v. Bitterman*, 714 So.2d 356, 363 (Fla.1998) ("The ability to collect attorney's fees from an opposing party, as well as the obligation to pay such fees, is substantive in nature."); *L. Ross, Inc. v. R.W. Roberts Constr. Co., Inc.*, 481 So.2d 484, 485 (Fla.1986) ( "The right to attorney fees is a substantive one[.]").  Accordingly, and as this District Court has previously determined, Section 626.9373, Fla. Stat. is Florida substantive law.  *See Maloy v. Scottsdale Ins. Co.*, 376 F. Supp. 3d 1249, 1253 (M.D. Fla. 2019) (in stating that Section 626.9373, Fla. Stat. is Florida substantive law, it noted that it found cases interpreting the very similar Fla. Stat. § 627.428 to be persuasive as to § 626.9373.).

Therefore, as the policy and the instant dispute are governed by the law of Georgia, LANDMARK is entitled to summary judgment as RIVERSIDE is foreclosed from recovering for attorney's fees under Fla. Stat. § 626.9373.

## CONCLUSION

Accordingly, LANDMARK respectfully requests the entry of partial summary judgment in its favor ruling that (1) RIVERSIDE's claim for Business Income/Rental Value is limited by the policy; (2) RIVERSIDE's claim for lost business opportunity is not recoverable as a matter of law; (3) RIVERSIDE is precluded from recovering damages on a replacement cost basis; (4) RIVERSIDE is precluded from recovering for the increased cost of construction; (5) RIVERSIDE is precluded from recovering for the cost associated with replacing the Building C Roof; (6) LANDMARK is entitled to summary judgment pertaining to RIVERSIDE's claim of breach of contract due to the nonrenewal of the policy; and that (7) RIVERSIDE cannot recover attorney's fees pursuant to Section 626.9373, Fla. Stat.

**WHEREFORE**, Defendant, LANDMARK AMERICAN INSURANCE COMPANY's Motion for Partial Summary Judgment should be found well taken and granted, and this Court should enter judgment in favor of Defendant and against Plaintiffs, and for such other relief as this Court deems appropriate.

BUTLER WEIHMULLER KATZ CRAIG LLP

/s/ Troy J. Seibert, Esq.

**TROY J. SEIBERT, ESQ.**
Florida Bar No.:  0084668
tseibert@butler.legal
**WILLIAM R. LEWIS, ESQ.**
Florida Bar No.:  0879827
wlewis@butler.legal
Secondary:      msmalls@butler.legal
                       knelson@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida 33602
Telephone:     (813) 281-1900
Facsimile:     (813) 281-0900
*Attorneys for Defendant, Landmark Insurance Company d/b/a RSUI Group, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy hereof has been furnished to:

      Joseph W. Janssen, III, Esq.
      John M. Siracusa, Esq.
      Janssen, Siracusa & Keegan PLLC
      120 South Olive Avenue, Suite 504
      West Palm Beach, FL  33401
      jjanssen@jasilaw.com; jsiracusa@jasilaw.com
      Secondary:  kmaska@jasilaw.com
      Attorneys For:  Riverside Apts of Cocoa, LLC
      fka Riverside Apts Ltd. & Equity Planning Corp.

      Thomas J. Connick
      Connick Law, LLC
      25550 Chagrin Boulevard, Suite 101
      Beachwood, OH  44122
      tconnick@connicklawllc.com
      Attorneys For: Riverside Apts of Cocoa, LLC
      fka Riverside Apts Ltd. & Equity Planning Corp.

by CM/ECF on June 18, 2020.

      /s/ Troy J. Seibert, Esq.
      **TROY J. SEIBERT, ESQ**