IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| RIVERSIDE APARTMENTS OF COCOA, LLC, *et al.*,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>LANDMARK AMERICAN INSURANCE COMPANY, ETC,<br><br>　　　　　Defendant. | CASE NO. 6: 18-cv-1639<br><br>JUDGE PAUL G. BYRON<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT, LANDMARK AMERICAN INSURANCE COMPANY'S *DAUBERT* MOTION TO STRIKE THE TESTIMONY OF PLAINTIFFS' EXPERT WITNESS GERLAD ZADIKOFF PERTAINING TO ANY PURPORTED DAMAGE TO BUILDING B AND BUILDING D ROOFS** |

## *OPPOSITION BRIEF*

Defendant, Landmark American Insurance Company (hereinafter referred to as "Defendant," "Landmark," or "RSUI"), moves this Honorable Court to exclude the testimony of the eminently qualified Dr. Gerald Zadikoff, PhD ("Zadikoff") related to the limited issue of any purported damages to the roofs of Buildings B and D at the subject property. Similarly, Landmark basis its request to exclude Zadikoff on this limited issue, because:

1. Zadikoff did not inspect the subject property until nearly three years after Hurricane Matthew and after a second hurricane, Hurricane Irma, allegedly caused damage to the property;

2. At the time Zadikoff inspected the subject property three of the four roofs had already been repaired; and

3. Zadikoff did not perform any destructive testing.

The Federal Rules of Evidence provide that:

>A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "'[T]he task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand' is assigned to the district court." *United Fire & Cas. Co. v. Whirlpool Corp.*, 704 F.3d 1338, 1341 (11th Cir. 2013) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)).

"The Court must evaluate a three-prong test to qualify an expert witness: "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Rink*, 400 F.3d at 1291–92.[1] "The party offering the expert has the burden of satisfying each of these three elements by a preponderance of the evidence." *Nunez v. Coloplast Corp.*, 19-CV-24000, 2020 WL 2315077, at *2 (S.D. Fla. May 11, 2020). Under *Daubert*, a witness is qualified as an expert if he or she possesses specialized knowledge, skill, experience, training, or education. *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1310 (11th Cir. 1999); *see also* Fed. R. Evid. 702. The focus is not formal training or education; "experience in a field may offer another path to expert status." *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004).

Landmark concedes that it is not challenging Zadikoff's qualification, but instead only the reliability and helpfulness of his opinions.

---

[1] *Rink v. Cheminova, Inc.*, 400 F.3d 1286 (11th Cir. 2005),

2

District courts should consider four factors when assessing the reliability of a scientific expert's testimony: (1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the theory or technique used by the expert has been subjected to peer review and publication; (3) whether there is a known or potential error rate of the methodology; and (4) whether the technique has been generally accepted in the relevant scientific community. *United Fire and Cas. Co.*, 704 F.3d at 1341 (citing *Daubert*, 509 U.S. at 593–94). "At the same time, the [Supreme] Court has emphasized that these factors are not exhaustive and are intended to be applied in a 'flexible' manner." *Id*. (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999)).

*Daubert* also reminds litigants that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596; *Small v. Ford Motor Co.*, 12-80841-CIV, 2014 WL 12452092, at *3–4 (S.D. Fla. Aug. 18, 2014); *McAteer v. Ciardi Ciardi & Astin, P.C.*, 9:18-CV-81264, 2019 WL 4420363 (S.D. Fla. Sept. 16, 2019). Moreover, while a district court serves as a gatekeeper to the admissibility of expert testimony, credibility and persuasiveness are reserved for the jury. *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003); *McAteer*, 2019 WL 4420363, at *1.

Landmark purportedly challenges the reliability of Zadikoff's opinions because he did not inspect the property until approximately three years after Hurricane Matthew; at the time of his inspection three of the four building roofs had been allegedly repaired; and he did not perform any destructive testing. But these limited arguments do not support the proposition that Zadikoff's methodology was faulty, or that his opinions will not assist the average lay juror in determining Plaintiffs' damages in this matter. In making its conclusory argument, Defendant fails to

acknowledge the following:

- Although Defendant is not challenging Zadikoff's qualifications, his qualifications are beyond reproach and serve as a foundation to the methodologies he employed in investigating this matter.[2]

- Zadikoff outlines his methodology, per ASTM approved methodology for the inspecting of a building envelope, which includes: Review of project documents, evaluation of design concept, determination of service history, physical inspection, investigative testing, analysis, and report preparation.[3]

- Zadikoff had a team of three people inspecting the site.[4][5]

- Zadikoff followed the ASTM methodology for building envelope inspections, which follows a seven-step process.[6]

- Zadikoff is a contributing author to the ASTM E58 Committee on forensic engineering and follows those rules and regulations during the inspection of properties, such as the subject property.[7]

- Zadikoff has evaluated and assessed Hurricane damage, like that in this case, in accordance with the requirements of Miami-Dade County, Port of Miami, and the State of Florida.[8]

It is also important to note here, that the very arguments as to Zadikoff's alleged lack of

---

[2] See *Curricula Vitae* of Gerald Zadikoff, PE, attached hereto as ***Appendix 1***.
[3] See Zadikoff Report at p. 6 (report without photographs), attached hereto as ***Appendix 2***.
[4] Note, per This Honorable Court's Local Rule 3.03(c), Plaintiffs are not attaching or filing the transcripts of depositions referenced herein as this Honorable Court has not requested or ordered those transcripts filed. If this Honorable Court desires otherwise, Plaintiffs will promptly file the deposition transcripts referenced herein as directed by this Honorable Court.
[5] Zadikoff Depo. Tr. at p. 24.
[6] Zadikoff Depo. Tr. at p. 98, Lines 4-17.
[7] Zadikoff Depo. Tr. at p. 98, Lines 13-17.
[8] Zadikoff Depo. Tr. at p. 245, Lines 1-22.

methodology and/or helpfulness apply even more to Landmark's purported engineering expert, Ms. Jennifer Teliga, PE ("Teliga"). Consider the following:

| *Zadikoff* | *Teliga* |
|---|---|
| Zadikoff followed the ASTM methodology for building envelope inspections, which follows a seven-step process,[9] and is on the ASTM E58 Committee on forensic engineering and follows those rules and regulations during the inspection of properties, such as the subject property.[10] | Teliga could not even articulate what the scientific method was.[11] |
| Methodology performed per ASTM approved methodology for the inspecting of a building envelope, which includes: Review of project documents, evaluation of design concept, determination of service history, physical inspection, investigative testing, analysis, and report preparation.[12] | Did not consult or even look at any codes relative to forensic investigations including, but not limited to, ASTM.[13] In fact, Teliga does not even carry any of the ASTM or ASCE inspection guidelines with her.[14] |
| Zadikoff follows all applicable standards for inspecting hurricane damage, including ASTM Standards.[15] | Teliga did not follow the Best Practices for inspection purposes related to her inspection of Plaintiffs' property.[16] |
| Mr. Zadikoff has been accepted as an expert witness in federal court multiple times. | Ms. Teliga has never been accepted as an expert in federal court.[17] |
| Zadikoff performed infrared thermography testing and reviewed multiple prior property reports and photographs to establish a baseline for damage to the property.[18] | Ms. Teliga did not perform any testing, and merely performed a visual inspection, other than "touching" the roof.[19] She did not review any historical reports regarding the property. |

---

[9] Zadikoff Depo. Tr. at p. 98, Lines 4-17.
[10] Zadikoff Depo. Tr. at p. 98, Lines 13-17.
[11] Teliga deposition Tr. at pp 83-84, Lines 19-25; 1-2.
[12] Zadikoff Report.
[13] Teliga Deposition Tr. at p. 83, Lines 1-8.
[14] Teliga Deposition Tr. at p. 185, Lines 12-21.
[15] Zadikoff Depo. Tr. at pp. 98-101.
[16] Teliga Deposition Tr. at p. 200, Lines 16-20.
[17] Teliga Depo. Tr. at p. 186, Lines 14-17.
[18] Zadikoff Depo. Tr. at pp. 76-77, 128-129, 153.
[19] Teliga depo. Tr. at pp.

| | |
|---|---|
| Zadikoff had a team of three people inspecting the site. | Teliga inspected the property alone.[20] |
| Zadikoff reviewed the Regional Report and AEI report to assist in developing a baseline for the condition of the property prior to Hurricane Matthew. | RSUI never provided Teliga with the Regional Report. Or AEI Report[21] |

In seeking to exclude Zadikoff, RSUI fails to fully disclose Zadikoff's testimony in most respects. For example, RSUI contends that "he never analyzed the impact of Hurricane Irma to the RIVERSIDE property."[22] But RSUI omits two very important data points surrounding this contention. First, Zadikoff testified that he did not need to determine whether any damage was caused to the property by Hurricane Irma, because based on his education, training and experience, he knew there was insufficient loading that would cause any damage, i.e. Hurricane Irma did not cause any damage to the property because it did not generate enough wind.[23] In fact, Zadikoff expressly testified that to a reasonable degree of scientific certainty Hurricane Irma did not cause any uplift of the roofs the Property.[24] And, for his methodology in this regard, Zadikoff analyzed NOAA data.[25] Second, RSUI challenges Zadikoff's methodology and conclusions in this regard, despite the fact its own expert found no wind damage at the Property due to Hurricane Irma. RSUI retained the firm of Madsen, Kneppers & Associates, Inc. ("Madsen") to serve as its construction/estimating expert in this matter. Shortly after Hurricane Matthew and Plaintiffs' submission of their damages claim related to same, RSUI improperly non-renewed Riverside.

---

[20] Teliga depo. Tr. at pp. 120, Lines 22-25; p. 121, Lines 18-21
[21] Holm depo Tr. at p. 174.
[22] RSUI Motion at p. 6 of 7.
[23] Zadikoff Depo. Tr. at pp. 57-58, Lines 7-25; 1-12. See also, Errata Sheet P. 111, Line 19-23.
[24] Zadikoff Depo. Tr. at p. 110, Lines 6-12.
[25] This is acceptable methodology and information to rely upon in developing expert opinions and conclusions. *Clena Investments, Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653 (S.D. Fla. 2012); *Incardone v. Royal Caribbean Cruises, Ltd.*, 16-20924-CIV, 2018 WL 6520934 (S.D. Fla. Dec. 11, 2018), *report and recommendation adopted,* 16-20924-CIV, 2019 WL 8989848 (S.D. Fla. June 5, 2019).

Riverside was therefore forced to obtain new insurance. Riverside procured new insurance from Axis Insurance Company. After Hurricane Irma hit, Riverside presented a claim with Axis for any damage related to Hurricane Irma. Axis also hired Madsen through its independent adjusting company York Risk Services Group, Inc. On November 13, 2017 Madsen concluded, as to alleged damage at the property related to Hurricane Irma:

- "We observed that the roofs on buildings East A, North B and West C including the Laundry & Maintenance building have not been damaged as a result of wind [from Hurricane Irma] …"[26]

- No wind damage [from Hurricane Irma] to the Laundry & Maintenance Building.[27]

- No wind damage [from Hurricane Irma] to Building North B.[28]

- No wind damage [from Hurricane Irma] to Building West C.[29]

- No wind damage [from Hurricane Irma] to Building East A.[30]

- "During our evaluation of the roofs on buildings East A, North B, West C and the Laundry & Maintenance building, no storm related impairment was observed."[31]

The Madsen November 13, 2017 report was contained within the file of Matthew Houts ("Houts") who RSUI has presented as an expert in this matter.[32] RSUI has been in possession of this report for a very long time, including prior to Zadikoff's deposition. Houts testified that James J. Hlavacek, RRO ("Hlavacek") is a member of Madsen's roofing group who is very competent and thorough,[33] and he believes the accuracy of Hlavacek's opinion that Hurricane Irma did not

---

[26] Madsen November 13, 2017 Expert Report p. 2 of 6, attached hereto as ***Appendix 3***.
[27] *Id.*
[28] *Id.* at p. 3 of 6.
[29] *Id.*
[30] *Id.* at p. 4 of 6.
[31] *Id.* at p. 5 of 6.
[32] Houts Depo. Tr. at p. 142, Lines 15-16.
[33] Houts Depo. Tr. at p. 141, Lines 3-19.

cause any wind damage at the Property.[34]

Another example of RSUI seeking exclusion of Zadikoff based upon a filtered, incomplete and, in fact, contrary presentation of the facts is the criticism that Zadikoff should be excluded for allegedly not performing "destructive" testing. Yet, RSUI's own engineering expert, Teliga, testified that she did not perform any destructive testing as it was unnecessary.[35] In fact, Teliga testified that a thorough investigation and inspection of the roof can be performed without destructive testing.[36] Yet, RSUI contends that "destructive testing would be required in order to offer a valid opinion…"[37] Thus, it is quite disingenuous of counsel for RSUI to assert the argument that Zadikoff's methodology is inadequate because he did not perform destructive testing, when literally hours before filing its motion to exclude Zadikoff on these grounds, RSUI's counsel was physically sitting next to Teliga at her deposition on June 17, 2020 as she repeatedly testified that she did not perform any destructive testing.[38]

Next, the fact that Zadikoff did not inspect the Property until 2019 or that certain portions of roofs may have already been repaired does not establish inadequate methodology. In fact, in his vast experience assessing Hurricane damage, Zadikoff has performed his analysis even without visiting a damaged location, because the site was gone, or based on photos and history, such as he did in this matter.[39] Here, Zadikoff established his baseline for the condition of the property as it existed prior to Hurricane Matthew by inspecting preexisting Florida State Inspection Reports for the Property[40], previous property reports from independent inspectors, including a 2014 Property

---

[34] Houts depo. Tr. at p. 142, Lines 9-14.
[35] Teliga depo. Tr. at p. 78, Lines 10-15; p. 85, Lines 22-23; p. 87, Line6-7; p. 96, Lines 14-16; p. 99, Lines 1-18.
[36] Teliga Depo. Tr. at p. 98, Lines 7-16.
[37] RSUI Motion at p. 2 of 7.
[38] Additionally, Ms. Teliga's failure to engage in destructive testing carries with it separate and distinct consequences for liability that do not apply to Zadikoff's inspection and investigation.
[39] Zadikoff Depo. Tr. at p. 149, Lines 7-20.
[40] Attached hereto as ***Appendix 4***.

Condition Assessment Report prepared by AEI Consultants on behalf of Riversides' lender,[41] (AEI Report") and RSUI's pre-policy Property inspection report(s).[42]

The AEI Report[43], which is a "Baseline Property Condition Assessment" as of December 18, 2014 found, among other things, that:

- The Property appears in overall good condition.[44]

- The remaining useful life of the Property is not less than 40 years.[45]

- Observations of the exterior walls revealed no apparent signs of cracking or movement that would indicate excessive settlement. There were no observed or reported deficiencies noted. The substructure appeared to be in overall good condition.[46]

- The walls and floors of the structures appeared to be plumb, level, and stable. There were no significant signs of deflection or movement. No items of deferred maintenance were observed or reported. The superstructure appears to be in overall good condition.[47]

- Exterior walls were in good condition, and no items of deferred maintenance were observed.[48]

- Overall, the doors at the Property appeared to be in good to fair condition; no reported efficiencies were noted. The doors are expected to last through the term [of the loan] with minor repairs per routine maintenance.[49]

- The roofs appeared to be in overall good to fair condition, and no items of deferred

---

[41] Attached hereto as ***Appendix 5.***
[42] Zadikoff Depo. Tr. at pp. 153-156, Lines 10-25; 1-25; 1-25; 1-22; attached as ***Appendix 6***.
[43] The AEI Report is a document kept in the ordinary course and scope of Riversides' business records and is a corporate document relative regularly conducted activity.
[44] AEI Report, at p. 4.
[45] AEI Report at p. 4.
[46] AEI Report at p. 12.
[47] AEI Report at p. 12.
[48] AEI Report at p. 12.
[49] AEI Report at p. 13.

maintenance were observed or reported.

Thus, as of 2014, the property was in overall good condition, including the components that Zadikoff found to be damaged by Hurricane Matthew, less than two years later. Moreover, prior to insuring the Property, RSUI commissioned a property risk report from Regional Reporting, Inc, dated February 18, 2016.[50] ("Regional Report")[51]. RSUI engages Regional Reporting on a regular basis to perform property inspections.[52] RSUI used the Regional Report to determine whether or not to take on the risk of insuring the Property.[53] RSUI used the Regional Report to determine the Premium it was going to charge and, even though allegedly issued after RSUI bound the policy, RSUI relied upon the Regional Report.[54] In fact, the Regional Report was in both RSUI's claim file and underwriting file, and one of the purposes of the report is to determine the condition of the property, which RSUI relies upon.[55] The Regional Report authored on February 18, 2016 – less than eight (8) months before Hurricane Matthew, determined, among other things, that:

- The Property Manager "was cooperative and supplied all needed information."[56]
- The buildings were constructed in 1963 with a total square footage of 29,336 and have received updates as needed.[57]
- The roofs were replaced in 2012.[58]
- Recommendations – None.[59]

---

[50] Attached hereto as ***Appendix 6***.
[51] The Regional Report was authored by an inspector by the name of Robert Tanner.
[52] Seglie Depo. Tr. at pp. 71-71, Lines 23-25; 1-6.
[53] Holm Depo. Tr. (Vol. 1) at pp. 105-106, Lines 21-25; 1-2.
[54] Holm Depo. Tr. (Vol 1) at p. 106; Lines 3-13.
[55] Holm depo. Tr. (Vol ii) at p. 163; Lines 6-20.
[56] Regional Report at p. 1.
[57] *Id.*
[58] *Id.*
[59] *Id.*

10

- Windows are in good condition.[60]

- No roof leakage is evident.[61]

- No contents are suspectable to water damage.[62]

Many of these conditions that were noted as being in good condition, were subsequently identified by Zadikoff as being damaged by Hurricane Matthew. Zadikoff also performed infrared thermography to determine if the buildings were still experiencing moisture and water problems.[63] He deployed drones to evaluate the roofs.[64]

Mr. Zadikoff's methodology was demonstrably better than the methodology employed by Teliga, which she confirmed consisted of only a visual inspection, and touching the roof. Moreover, Teliga was never provided, and never reviewed, the preexisting Florida State inspection reports, the AEI Report, or RSUI's own property risk report. Zadikoff's methodology, at the very worst, is the same as Defendant's engineering expert (as mentioned actually much better). Other courts have noted that where opposing experts perform similar analysis, the methodology cannot be deemed unreliable. *Clena Investments, Inc.*, 280 F.R.D. at 663 ("As a preliminary matter, the Court notes that it appears that XL's proposed expert, EFI, engaged in a very similar process."). Moreover, similar to the expert in *Clena*, Zadikoff testified that he can provide an analysis based upon his vast training, education and experience based upon the items that were provided for his review, coupled with his onsite inspection, even if that occurred in 2019. The *Clena* Court, in similar circumstances opined when ruling upon the reliability of an expert engineer assessing hurricane damage that:

"More specifically, Calitu testified that, as a result of his training and experience, he knows

---

[60] *Id.* at p. 5.
[61] *Id.*
[62] *Id.*
[63] Zadikoff Depo. Tr. at p. 129.
[64] Zadikoff depo. Tr. at pp. 133-134, Lines 22-25; 1-6.

11

>where to look and what to look for when inspecting a property for damage, and, as a professional engineer, he understands the import of cracks and holes that an untrained person would not. He further appreciates the impact of high winds on property, having to take these effects into account when building to ensure Hurricane Code compliance. For all of these reasons, Calitu may rely upon his training, experience, and inspection of the Property to opine that it is more likely that Hurricane Wilma imposed the Property damage than that any prior hurricane did. And because XL's objection to the second opinion stems only from the fact that that opinion ties the damages to the Property to Hurricane Wilma, the Court similarly overrules XL's challenge to the second opinion set forth above."

*Clena Investments, Inc.*, 280 F.R.D. at 664.

Next, as to Defendants argument that Zadikoff's testimony will not help the trier of fact; nothing could be further from the truth. Expert testimony is helpful to the trier of fact only "if it concerns matters that are beyond the understanding of the average lay person." *Frazier* 387 F.3d at 1262; *see also King v. Cessna Aircraft Co.*, 03-20482-CIV, 2010 WL 1980861, at *5 (S.D. Fla. May 18, 2010). In other words, "[p]roffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Id.* at 1262–63 (citing 4 *Weinstein's Fed. Evid.* § 702.03[2][a]). Moreover, where an expert opinion tends to confuse the trier of fact, it may not satisfy the helpfulness prong. *See Frazier*, 387 F.3d at 1258. Finally, "[b]ecause of the powerful and potentially misleading effect of expert evidence," judges must take care not to allow misleading and prejudicial opinions to influence the finder of fact. *See id.* at 1263; *see also Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1111 (11th Cir. 2005) (citing *Frazier*, 387 F.3d at 1263); *Clena Investments, Inc.*, 280 F.R.D. at 664.

Here, as outlined above, Zadikoff reviewed several documents outlining the historical condition of the property prior to Hurricane Matthew, reviewed several photographs taken right after Hurricane Matthew hit, evaluated relevant weather data from NOAA, and conducted a lengthy site visit with two other team members, that included infrared thermography and drone

inspection. Zadikoff's methodology, therefore, is similar to that of the experts in *Ctr. Hill Courts Condo. Ass'n, Inc. v. Rockhill Ins. Co.*, 19-CV-80111, 2020 WL 475633 (S.D. Fla. Jan. 28, 2020) wherein the Court reasoned as follows regarding experts analyzing Hurricane Irma:

> Likewise, Mr. Biller's testimony establishes that his opinions are not, as Defendant argues, based solely on the information supplied by Plaintiff's property manager and condominium board president. Instead, as detailed above, Mr. Biller reviewed photographs of the damage sustained that were taken soon after Hurricane Irma struck, together with weather data generated during the storm, and he conducted a lengthy site inspection of the Property, all of which were used to verify the historical information supplied and substantiate his ultimate opinions. Moreover, his testimony will assist the trier of fact in understanding the nature of the damage sustained and the cause of such damage. Thus, Defendant's arguments regarding Mr. Biller's consideration of the historical information provided by Plaintiff are challenges to the weight of his testimony, rather than its reliability, helpfulness, or admissibility, which must be evaluated by the jury. *See Vision I Homeowners Ass'n, Inc.*, 674 F. Supp. 2d at 1325 (quoting *Jones*, 861 F.2d at 662). "[V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Quiet Tech. DC-8, Inc.*, 326 F.3d at 1341 (quoting *Daubert*, 509 U.S. at 596). Accordingly, Defendant's *Daubert* Motion is denied as it relates to Mr. Biller's expert opinions.

The fact that Zadikoff did not inspect the subject property until nearly three years after Hurricane Matthew neither renders his testimony unreliable, nor would excluding Zadikoff based on Defendant's arguments, which apply equally, if not worse, to its own expert engineer, Teliga, be equitable. Zadikoff has been engage in the forensic investigation of hurricane damage for over 30 years. In the course of that time, as a practical matter, many inspections occur well-after the time of the Hurricane event – even years. Zadikoff testified that "many times" investigations occur year later, and even more damage is found after those inspections.[65] Further, Zadikoff had access to and did review a variety of materials that provided him with sufficient baseline of the prior condition of the property. Zadikoff, for instance, had State of Florida reports that outlined the

---

[65] Zadikoff deposition Tr. At p. 64, Lines 2-16.

13

condition of the subject property prior to Hurricane Matthew.[66] Further, at least one court recently held that a lapse of two years in investigating a hurricane does not render an expert's opinions unreliable. Instead, that, as well as other issues, are proper lines of attack on cross examination. *Nat'l Union Fire Ins. Co. of Pittsburgh PA v. SPX Flow US, LLC*, 18-CV-80332, 2019 WL 1227987 (S.D. Fla. Mar. 14, 2019). Further, like Zadikoff, Defendants engineer Teliga also inspected the property years after Hurricane Matthew, and as late as 2019.

Under *Daubert*, while a district court must take on the role of gatekeeper, its role "is not intended to supplant the adversary system or the role of the jury." *Quiet Technology DC-8, Inc.*, 326 F.3d at 1341 (citations omitted). "[I]t is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Technology DC-8, Inc.*, 326 F.3d at 1341 (citations omitted) (quotation marks omitted). The district court cannot exclude an expert based on a belief that the expert lacks personal credibility. *Rink*, 400 F.3d at 1293 n.7. To the contrary, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Quiet Technology DC-8, Inc.*, 326 F.3d at 1341 (quoting *Daubert*, 509 U.S. at 596). "Thus, '[o]n cross-examination, the opposing counsel is given the opportunity to ferret out the opinion's weaknesses to ensure the jury properly evaluates the testimony's weight and credibility.'" *Vision I Homeowners Ass'n, Inc.*, 674 F. Supp. 2d at 1325 (quoting *Jones*, 861 F.2d at 662). Ultimately, "a district court enjoys 'considerable leeway' in making" evidentiary determinations such as these. *Cook ex rel. Estate of Tessier*, 402 F.3d at 1103 (quoting *Frazier*, 387 F.3d at 1258); *Centre Hill Courts Condominium Association, Inc.*, 2020 WL 475633, at *3.

Here, vigorous cross-examination of Zadikoff and Teliga regarding their respective

---

[66] See State of Florida Inspection Report, attached hereto as ***Appendix 1***; Zadikoff Depo. Tr. At p. 153, Lines 16-25.

14

methodologies and conclusions is the measure that this Honorable Court should allow in this matter. Indeed, RSUI criticizes Zadikoff for some of the very same alleged gaps in methodology that Teliga admits to related to her own limited investigation. Allowing the jury to assess the comparison between Zadikoff and Teliga as to their respective methodologies and opinions deriving therefrom comports with this Honorable Court's role as gatekeeper. Conversely, prohibiting the jury from being able to assess these comparisons will severely prejudice the Plaintiffs, and will actually inhibit the jury's ability to assess the full merits of the claims asserted by Plaintiffs in this matter.

For these reasons, Plaintiffs respectfully requests that this Honorable Court deny Defendant's Motion to Strike the Testimony of Plaintiffs' expert Witness Gerald Zadikoff Pertaining to any Purported Damage to the Building B and Building D Roofs as matter of law.

Respectfully submitted,

/s/ Thomas J. Connick
Thomas J. Connick, Esq. (0070527)
**Connick Law, LLC**
25550 Chagrin Blvd., Suite 101
Beachwood, Ohio 44122
(216) 364-0512 | Fx: (216) 609-3446
tconnick@connicklawllc.com


Joseph W. Janssen, III
Florida Bar 166067
JANSSEN, SIRACUSA & KEEGAN PLLC
120 South Olive Avenue, Suite 504
West Palm Beach, Florida 33401
Telephone: (561) 420-0583
Facsimile: (561) 420-0576
Email: jjanssen@jasilaw.com
*Attorney for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of July 2016, the foregoing was filed electronically, and that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Thomas J. Connick
Thomas J. Connick (0070527)
*Attorney for Plaintiffs*