IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

RIVERSIDE APARTMENTS OF          )    CASE NO. 6: 18-cv-1639
COCOA, LLC, *et al*.,            )
                                 )    JUDGE PAUL G. BYRON
              Plaintiffs,        )
                                 )    **PLAINTIFFS' OPPOSITION TO**
v.                               )    **DEFENDANT'S OMNIBUS MOTION**
                                 )    **FOR PARTIAL SUMMARY**
LANDMARK AMERICAN INSURANCE      )    **JUDGMENT**
COMPANY, ETC,                    )
                                 )

                    Defendant.

Plaintiffs Riverside Apartments of Cocoa, LLC, Equity of America, Inc, and Equity Planning Corporation ("Riverside" or "Plaintiffs"), by and through their undersigned counsel, submits this Response Memorandum of Law in Opposition to Defendant Landmark American Insurance Company's ("Landmark," "RSUI," or "Defendant") Omnibus Motion for Partial Summary Judgment ("Motion"), and request that this Honorable Court deny Defendant's motion as a matter of law.

### *ADDITIONAL AND/OR DISPUTED FACTS BEARING ON LANDMARK'S MOTION FOR PARTIAL SUMMARY JUDGMENT, RIVERSIDE CITES TO THIS HONORABLE COURT TO THE FOLLOWING:[1]*

1. Ms. Bonnie Reinberg is Plaintiffs' Corporate Representative, and has been intimately involved in the operation, maintenance, insurance, and lending related to the Property since at least 2014.[2]

2. Jeff Cohen served as Riverside's retail broker and agent.[3]

---

[1] The Parties Stipulation of Agreed Material Facts for Purposes of Summary Judgment was filed separately pursuant to Local R. 4.15 and is incorporated herein by reference. See [Doc No. 84].
[2] Declaration of Bonnie E. Reinberg, attached hereto as ***Appendix A***.
[3] Declaration of Bonnie E. Reinberg, attached hereto as ***Appendix A***; Declaration of Jeff Cohen, attached hereto as ***Appendix B***

3. Mr. Canterna was a wholesale broker and had no direct interaction or agency relationship with Riverside.[4] Mr. Canterna did not have authority to bind coverage on behalf of Riverside.[5] Instead, he was working as agent for Landmark Insurance in his role as a wholesale broker.[6]

4. Riversides' agent, Jeff Cohen, did not deal directly with Landmark, and the last act in the chain of procuring insurance for the Property was when Mr. Canterna relayed the quote of insurance to Mr. Cohen and which Mr. Cohen approved and accepted on behalf of Riverside; and all of those communications occurred in Ohio.[7]

5. The State of Florida inspected the property prior to Hurricane Matthew in June 2016. In this official State of Florida report, only three (3) violations were found, and none of them related to any type of wear and tear, nor did it depict any damage that was found at the property after Hurricane Matthew.[8] Notably, the State of Florida did not find any violations regarding the condition of any of the roofs located at the property. Fran Nichols, a former Property Manager at the property, confirmed that roofs at the property were resealed in July of 2016.[9]

6. On June 12, 2017, the State of Florida again inspected the property.[10] This inspection noted water damage and rotted wood throughout the exterior of the property. The inspector also noted that during her visit, the property showed large amounts of damage

---

[4] Declaration of Bonnie E. Reinberg, attached hereto as ***Appendix A***; Declaration of Jeff Cohen, attached hereto as ***Appendix B***.
[5] Declaration of Bonnie E. Reinberg, attached as ***Appendix A***; Declaration of Jeff Cohen, attached hereto as ***Appendix B***.
[6] Declaration of Jeff Cohen, attached hereto as ***Appendix B***.
[7] Declaration of Jeff Cohen, attached hereto as ***Appendix B***.
[8] See June 13, 2016 State of Florida Inspection report, attached as ***Appendix C*** to Declaration of Bonnie Reinberg.
[9] Deposition Tr. Of Fran Nichols at p. 80, attached as ***Appendix D***
[10] See June 12, 2017 State of Florida Inspection report, attached as ***Appendix E*** to Declaration of Bonnie Reinberg.

to the exterior of the building caused by Hurricane Matthew, and that an insurance claim

was pending. The Inspector also noted that the damage from Hurricane Matthew had

*increased* after Hurricane Irma which occurred on September 10, 2017.

7.  On May 16, 2017 Defendant's "expert" engineer, Jennifer Teliga, issued her expert report

    based upon two site visits made on November 4, 2016 and April 26, 2017, respectively.

    On June 30, 2017, David Alvarez, the Independent Adjuster hired by RSUI to adjust

    Plaintiffs' claims issued a letter[11] that provided, among other things, as follows:

    - That Plaintiffs' claim for Buildings A, B, and D were denied due to (1) Age related

      deterioration of the roofs; (2) No storm related forces caused any damage, but the

      damage was a result of normal wear and tear; (3) Window screens were damaged as a

      result of normal wear and tear and/or human activity; (4) Soffits were damaged as a

      result of long-term water leaks, not Hurricane Matthew; and (5) Guardrails were not

      damaged as a result of wind-related forces.

8.  Witnesses confirm that Hurricane Matthew destroyed the C Building, and caused

    substantial damage to, among other things, flashing, fascia, cracks to the building, and

    resulted in substantial water leakage[12] Matthew destroyed the appliances.[13]

9.  At the time relevant herein to the issue of procuring insurance for Riverside, Mr. Jeff

    Novak was Riversides' retail broker and agent.

10. TC Canterna was a wholesale broker and had no direct interaction or agency relationship

    with Riverside prior to Hurricane Matthew.

11. Mr. Canterna did not have authority to bind coverage on behalf of Riverside.

---

[11] See May 17, 2017 Letter from David Alvarez, attached as ***Appendix F***.
[12] Deposition Tr. Of Fran Nichols at pp. 42, 55-56, ***Appendix D***.
[13] *Id.* at p. 43.

12. Riverside sought an 18-Month Period of Restoration which reflected the 6-Month extension in the Policy that Riverside paid additional premium to have.

13. David Alvarez never provided anything other than a *proposed* Period of Restoration. A Period of Restoration was never actually established, and Mr. Alvarez never applied, and/or actually rejected, the extended 6-month indemnification period that Riverside purchased and was available under the Policy.

14. The portion of the roof of Building C, in excess of 60%, had not been replaced prior to Hurricane Matthew and was damaged and subject to wind uplift, allowing water intrusion into Building C.

15. October 9, 2019 Defendant issued Plaintiffs a Proposal for Settlement/Offer of Judgment pursuant to *Florida Stat. §768.69* and Fla. R. Civ. P. 1.442.

### ***RESPONSE ARGUMENT***

### III.   **LAW AND ARGUMENT**

    *A.*   ***Summary Judgment Standard***

The party seeking summary judgment bears the exacting burden of demonstrating that there is no dispute as to any material fact in the case. *Adickes v. S. H. Kress & Co*., 398 U.S. 144, 157 (1970); *Envtl. Def. Fund v. Marsh*, 651 F.2d 983, 990–991 (5th Cir. 1981). "In assessing whether the movant has met this burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion." *Clemons*, at 1368. "All reasonable doubts about the facts should be resolved in favor of the non-movant." Id. at 1369. A trial court must not decide any factual issues it finds in the records; if factual issues are present, the court must deny the motion and proceed to trial. *Environmental Defense Fund*, 651 F.2d at 991; *Lighting Fixture & Elec. Supply Co. v. Cont'l Ins. Co*., 420 F.2d 1211, 1213 (5th Cir. 1969). Summary judgment may be inappropriate even where the parties agree on the basic facts but disagree about the factual inferences that should be drawn from these facts. *Clemons*, at 1369; *Lighting Fixture & Elec. Supply Co*., 420 F.2d at 1213.

4

If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment. *Clemons,* at 1369; *Impossible Elec. Techniques, Inc. v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1026 (5th Cir. 1982). Applying these principles to the instant case, this Honorable Court should deny Defendant's Motion for Partial Summary Judgment as a matter of law. Given the ambiguities in the record, the parties' conflicting versions of the facts, and the competing factual inferences arising from the contested facts, the only thing clear is that this is an inappropriate case for summary disposition. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296–97 (11th Cir. 1983).

      **B.**        ***Florida Law Applies***

Defendant's contention that this matter is governed by Georgia law, and not Florida law, belies both the facts, and is contrary to applicable law. It is Defendant's contention that under Florida choice of law rules, *lex loci contractus*, Georgia law applies to Plaintiffs' claims because the subject policy was allegedly bound in the State of Georgia. But, as discussed below, in the Event this Honorable Court finds that a Florida Surplus Lines Policy is not, in fact, governed by Florida law, the Policy, in the alternative, was bound in Ohio – not Georgia, making Ohio the governing law. However, this Honorable Court need not conduct that analysis, because the policy at issue is a *Florida* Surplus Line Insurance Policy, expressly governed by Florida law.[14] The Policy expressly states:

> **"THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW…"**[15]

Additionally, other portions of the Policy are *Florida specific* For example**,** the policy provides an "IMPORTANT NOTICE" regarding **"Important information for Florida**

---

[14] See Policy attached hereto as ***Appendix G***.

[15] Policy Declarations Page One; also found a second time in the Policy at Coverage Form RSG 99064 0106.

**Policyholders**.[16] The Policy also contains Florida specific endorsements, such as "**FLORIDA CHANGES – CANCELLATION AND NONRENEWAL.**"[17]

Florida Surplus Lines insurance policies are created by Florida Statute.[18] "Surplus-lines insurance is a type of insurance that a potential insured may obtain when the general-lines insurance market fails to provide a policy to cover the type of risk involved. *See* § 626.916(1)(a), Fla. Stat. Ann. (2003) The Florida Surplus Lines Office defines "Surplus Lines Insurance" as for:

> [a] risk or a part of a risk for which there is no market available through the original or producing agent in the standard or "admitted" market. Therefore, it is placed with non-admitted insurers, who are made eligible by the Florida Department of Financial Services to ***offer coverage in the State of Florida, in accordance with the surplus lines provisions of the state law***.[19]

"To ensure that there would be insurance companies willing to provide this type of coverage in our state, the Florida Legislature created a statutory scheme that permits out-of-state 'unauthorized' insurers to provide surplus-lines coverage through in-state 'surplus-lines agents,' who serve as middlemen between surplus-lines insurers and 'producing agents/general-lines agents,' who, in turn, provide surplus-lines policies to insureds. *Essex Ins. Co. v. Zota*, 985 So. 2d 1036, 1040 (Fla. 2008) (citing § 626.913-626.937 (2003), Fla. Stat. Ann.)." *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 643 F. Supp. 2d 1356, 1360 (S.D. Fla. 2009). And surplus lines insurance policies are not exempt from settled rules of contract interpretation under Florida law. *Steadfast Ins. Co. v. Celebration Source, Inc.*, 240 F. Supp. 3d 1295 (S.D. Fla. 2017), aff'd, 730 Fed. Appx. 865 (11th Cir. 2018). As the court stated in Essex Ins. Co., 985 So. 2d 1036:

---

[16] Policy Form RSG 99003 0803.
[17] Policy Form RSG 93041 0110.
[18] <u>See</u> § 626.901, Fla. Stat. Ann., *et set.*
[19] Florida Surplus Lines Services Office ("FSLSO") website: www.fslso.com (Emphasis added).

Surplus-lines insurance is a type of insurance that a potential insured may obtain when the general-lines insurance market fails to provide a policy to cover the type of risk involved. *See* § 626.916(1)(a), Fla. Stat. (2003) (requiring that general-lines agents make a certified, diligent effort to obtain coverage from the general-lines market before resorting to the surplus-lines market). To ensure that there would be insurance companies willing to provide this type of coverage in our state, ***the Florida Legislature created a statutory scheme*** that permits out-of-state "unauthorized" insurers to provide surplus-lines coverage through in-state "surplus-lines agents," who serve as middlemen between surplus-lines insurers and "producing agents/general-lines agents," who, in turn, provide surplus-lines policies to insureds. *See* §§ 626.913–626.937, Fla. Stat. (2003).[20]

*Essex Ins. Co.*, 985 So. 2d at 1040[21]

The Florida Surplus Lines Statute is a Florida consumer protection statute. *Brown & Brown, Inc. v. Estate of Edenfield ex rel. Edenfield*, 36 So. 3d 889 (Fla. 1st DCA 2010). As a creature of Florida statutory law, the doctrine of *lex loci contractus* does not apply to the subject policy. Under Florida's choice-of-law rules, *lex loci contractus* applies in contract matters, unless a statute modifies or abrogates a choice-of-law rule. *Brown v. Case*, 86 So. 684, 685 (Fla. 1920); *Prime Ins. Syndicate, Inc. v. B.J. Handley Trucking, Inc.*, 363 F.3d 1089, 1091 (11th Cir. 2004). § 626.913(2), Fla. Stat. Ann. provides:

> (2) It is declared that the purposes of the Surplus Lines Law are to provide orderly access for the insuring public ***of this state*** to insurers not authorized to transact insurance in this state, through only qualified, licensed, and supervised surplus lines agents resident in this state, for insurance coverages and to the extent thereof not procurable from authorized insurers; to protect such authorized insurers, ***who under the laws of this state must meet certain standards*** as to policy forms and rates, from unwarranted competition by unauthorized insurers who, in the absence of this law, would not be subject to similar requirements; and for other purposes as set forth in this Surplus Lines Law.[22]

§ 626.913, Fla. Stat. Ann.[23]

Furthermore, Landmark's corporate representative, Jonna Holm, testified that the Florida

---

[20] Emphasis added.
[21] At fn 2.
[22] Emphasis added.
[23] § 626.901(5), Fla. Stat. Ann. also provides that "The Legislature finds that a violation of this section constitutes an immediate threat to the health, safety, and welfare of the residents of this state."

statutes are incorporated into the subject policy, and if not complied with by Landmark results in landmark breaching the insurance contract.[24]

Ms. Holm as the corporate designee testified about facts within Landmark's collective knowledge, as well as Landmark's position, beliefs, and opinions, including its interpretations of documents and events. *QBE Ins. Corp. v. Jorda Enterprises, Inc.*, 277 F.R.D. 676, 689 (S.D. Fla. 2012) (citing *Great Am. Ins. Co. of New York v. Vegas Const. Co., Inc.*, 251 F.R.D. 534, 539 (D. Nev. 2008) Ms. Holm's testimony is binding upon Landmark. *Lebron v. Royal Caribbean Cruises, Ltd.*, 16-24687-CIV, 2018 WL 4258269, at *11 (S.D. Fla. Sept. 6, 2018).

Indeed, "[i]nsurance policies are deemed by law to incorporate applicable statutes." *MRI Associates of St. Pete, Inc. v. State Farm Mut. Auto. Ins. Co.*, 755 F. Supp. 2d 1205, 1210 (M.D. Fla. 2010): *see also Lutz v. Protective Life Ins. Co.*, 951 So. 2d 884, 887 (Fla. 4th DCA 2007). "[Provisions in an insurance policy must be construed and applied to be in full compliance with the Florida Statutes." *Trinidad v. Florida Peninsula Ins. Co*., 121 So. 3d 433, 441 (Fla. 2013); see also, *Allstate Ins. Co. v. Kaklamanos*, 843 So. 2d 885, 896 (Fla. 2003).

Finally, Defendant waived its tardy choice of law defense.[25] From the outset of this dispute, Defendant has relied upon and referenced Florida law in support of its various arguments, positions, and even proposed settlement offers. Not once has Defendant asserted that Georgia law controls in this matter, until presenting the issue, for the first time, on summary judgment.[26] A party can waive a choice-of-law argument. E.g., *Lott v. Levitt*, 556 F.3d 564, 568

---

[24] Depo. Tr. of Jonna Holm Vol II at p. 130, Lines 4-19, ***Appendix H***.

[25] Landmark has never raised the Choice of Law Defense prior to summary judgment, not even as an affirmative defense.

[26] See for Example, February 3, 2017 correspondence from attorney William R. Lewis to Florida Department of Financial services, Bureau of Consumer Assist. Civil Remedy Relying on Florida Law), attached hereto as ***Appendix I***; Defendant's Motion to Strike Improper Allegations in Plaintiffs' Second Amended Complaint (relying on Florida law)[Doc No. 26]; Defendant's Amended Motion to Strike Improper Allegations in Plaintiffs' Second Amended Complaint (relying on Florida law) [Doc No. 29]; Defendant admitted to subject-matter jurisdiction in its Answer to Plaintiffs' Third-Amended Complaint

(7th Cir. 2009) (Evans, J.). "Courts, though, do not generally hold the choice-of-law determination to have been waived until a late stage in litigation, such as at the point of making of summary judgment motions." *Wultz v. Bank of China Ltd*., 811 F. Supp. 2d 841, 845 (S.D.N.Y. 2011), opinion withdrawn on reconsideration, 865 F. Supp. 2d 425 (S.D.N.Y. 2012); *Reed Const. Data Inc. v. McGraw-Hill Companies, Inc*., 49 F. Supp. 3d 385, 423 (S.D.N.Y. 2014), aff'd, 638 Fed. Appx. 43 (2d Cir. 2016).

If this Honorable Court were to ignore Landmark's waiver on this issue, Plaintiffs would be severely prejudiced, as all discovery and fact development in this matter has been conducted for the purpose of Plaintiffs' establishing their breach of contract claims, only, under Florida law. Moreover, unlike Florida law, Georgia law does not require that Plaintiffs first establish a breach of contract before bringing a bad faith claim. Under Georgia law, Plaintiff can bring a statutory claim for bad faith even before a breach is established. Florida and Georgia insurance law differ in other material ways that would have changed the course and scope of discovery in this matter from the onset, that is now lost, to Plaintiffs severe prejudice.

Accordingly, this Honorable Court should deny Defendant's Motion for partial Summary Judgment as a matter of law.

### C.      *Alternatively – Ohio Law Applies*

Alternatively, in the event this Honorable Court determines that Florida law does not apply, then it is Ohio law – not Georgia law that applies under the *lex loci contractus* analysis. Mr. Canterna was a wholesale broker. He was not Riverside's agent, nor did he deal directly with

---

[Doc. No. 40]; On October 9, 2019 Defendant issued Plaintiffs a Proposal for Settlement/Offer of Judgment pursuant to *Florida Stat. §768.69* and Fla. R. Civ. P. 1.442. <u>See</u> Declaration of Bonnie E. Reinberg, ***Appendix A***.

Riverside.[27] Jeff Cohen was Riversides' retail broker/agent.[28] Brokers actually fall into two categories: "retail" and "wholesale." This division reflects the fact that it is common for one broker to approach another in an attempt to procure specialized insurance for a client, or to secure insurance after several insurers have declined to accept the risk being shopped. A broker's need for assistance in procuring coverage is particularly acute in the surplus lines market. *§ 3:3.Agents, brokers, and producers,* Cat Claims: Insurance Coverage for Natural and Man-Made Disasters § 3:3. **It is highly unlikely that** a wholesale broker, such as Mr. Canterna, may be deemed to be an agent or subagent of the insured . See, e.g., *Mate v. Wolverine Mut. Ins. Co.*, 592 N.W.2d 379, 382 (Mich. Ct. App. 1998) (quoting *Harwood v. Auto-Owners Ins. Co.*, 535 N.W.2d 207 (Mich. Ct. App. 1995)); *Gauert v. Chris-Leef Gen. Agency, Inc.*, 123 S.W.3d 270, 273–274 (Mo. Ct. App. 2003) (holding that insurance wholesaler was not liable for failing to have decedent's employer named as additional insured on CGL policy).

Here, Mr. Canterna, as the wholesale broker, was working as an agent of Landmark, not Riverside.[29] Mr. Canterna, and his company, received commission from Landmark, not Riverside.[30] Mr. Canterna is listed as Landmark's "producer."[31] Riversides' agent, Jeff Cohen, did not deal directly with Landmark; and the last act in the chain of procuring insurance for the Property was when Mr. Canterna relayed the quote of insurance to Mr. Cohen, which Mr. Cohen then accepted and approved on behalf of Riverside. All of those communications took place in Ohio.[32]

Accordingly, if Florida law does not apply, then the only alternative is Ohio law, because

---

[27] See Declaration of Bonnie E. Reinberg, ***Appendix A***; Declaration of Jeff Cohen, ***Appendix B***.
[28] See Declaration of Bonnie E. Reinberg, ***Appendix A***; Declaration of Jeff Cohen, ***Appendix B***.
[29] Declaration of Jeff Cohen, attached hereto as ***Appendix B***.
[30] See December 9-10, 2015 correspondence between Landmark and TC Canterna, attached hereto as ***Appendix J***.
[31] See Notice of Renewal at ***Appendix K***.
[32] Declaration of Jeff Cohen, attached hereto as ***Appendix B***.

the last act regarding the policy would have occurred between Landmark's wholesale broker, Canterna, and Riversides' retail agent, Jeff Novak – both of whom are located in Ohio.

> ### D.      *Riverside's Recovery of Business Income/Rental Value is Not Limited by the Policy*

Landmark contends that Riversides' business loss/rental income is limited to one building (Building 3) and limited to the amount of $116,295.[33] However, as an initial matter, it is undisputed that Riversides' property consists of four (4) Buildings – 1. 2, 3, and 4. And three of those buildings has its own Limit of Insurance for Rental value, as follows:

> Building 1 - $122,700.00.
>
> Building 2 - $61,300.00
>
> Building 3 - $$162,600.[34]

Thus, the potential Limit of Insurance for loss of business/rental income at the subject property is $346,600. Riversides' expert, John D. Sincore, has established that the business income/rental loss for Buildings 1, 2, and 3 is, collectively, is $336,816, which is below the collective Limit of Liability.[35] Thus, even if Georgia law applies to this matter, which Riverside contends it does not, Riversides' loss of business/rental income claim is still below the applicable limits, and Landmark admits that it has only paid $46,305.00 under those limits, or 13% of the available limits.

Moreover, the subject policy provides a twelve-month extended period of indemnity for business income/rental loss.[36] Landmark fails to account for that. In fact, Landmark, through its

---

[33] The difference between the limit of liability for Building 3 of $162,600 and the amount Landmark has already paid Riverside for same in the amount of $46,305.00.
[34] Policy Commercial Property Coverage Part Declarations at Form RSG 40001 1203
[35] See expert report of John D. Sincore regarding Riversides' Economic Damages Loss, attached hereto as ***Appendix L***.
[36] Depo. Tr. of Zhanna Seglie at pp. 59-60, Lines 15-25; 6-9; p. 61, Lines 9-17; p. 62, Lines 1-24, ***Appendix M***.

hired adjuster, David Alvarez, allegedly provided only a six-month period of restoration ("POR").[37] But this proposed POR was never actually established, nor did it comply with the extended indemnification period purchased by Riverside.[38] Mr. Alvarez rejected the 12-month extension[39], because Riverside allegedly provided no support that 12 months was  a reasonable time, despite the fact that was called out in the policy.[40]

Further, Landmark never provided a POR prior to issuing its denial. Defendant contacted Riversides' insurance agent on October 20, 2016 and advised that once its expert examined the roof it would be in a position to determine coverage.[41] On October 27, 2016 David Alvarez issued communication to Riversides' agent that "A period of Restoration CAN be determined, however, not at this time."[42] Defendant then formally acknowledged the loss on October 28, 2016.[43] In that acknowledgement, Landmark instructed Riverside that "Landmark will be engaging an engineer to inspect the railings, balconies and stairwells. ***Please do not have any repairs or alterations completed to these items until after our investigation***."[44] On December 13, 2016, counsel for Landmark issued correspondence advising that "Landmark continues to investigate the claim and requests that Riverside comply with the post-loss obligations[45] contained within the subject policy of insurance…"[46] On March 16, 2017, Mr. Alvarez in a letter to Riversides' Public Adjuster, Rich Stein, stated that Landmark's investigation was still

---

[37] Depo. Tr. David Alvarez at p. 112, Lines 5-9, ***Appendix N***.

[38] See Declaration of Bonnie E. Reinberg, at ***Appendix A***.

[39] Riverside sought an 18-Month POR which reflected the 12-Month extension in the policy that Riverside paid for. See Declaration of Bonnie E. Reinberg, at ***Appendix A***.

[40] Depo. Tr. David Alvarez at p.116, Lines 2-11.

[41] See October 20, 2016 email from Jonna Holm, attached hereto as ***Appendix O***.

[42] See October 27, 2016 email from David Alvarez, attached hereto as ***Appendix P***.

[43] See October 28, 2016 letter from RSUI to Bonnie Reinberg, attached as ***Appendix Q***.

[44] *Id*. at (unmarked) p. 5.

[45] Critically, Landmark corporate Representative Jonna Holm testified that Riverside cooperated in the claims investigation and complied with all its contractual obligation. Depo Tr. Jonna Holm (Vol III) at pp. 8, Lines 1-20; 9, Lines 5-19, ***Appendix R***.

[46] December 13, 2016 letter from attorney William Lewis to attorney Thomas J. Connick, attached hereto as ***Appendix S***.

ongoing.[47] On April 11, 2017, Mr. Alvarez issued email correspondence to all counsel, Landmark's adjuster and Corporate Representative, Riverside's Corporate Representative and Riversides' Public Adjuster, stating "I don't believe RSUI is in a position to accept or reject the proofs of loss until our investigation of the claims is complete." Further, Mr. Alvarez acknowledged that as of this date no POR had been established[48]

On May 16, 2017, Mr. Alvarez issued another email missive, stating that the investigation was ongoing and will not recommend that Riversides' Proofs of Loss be accepted..[49] The following day, May 17, 2017, Mr. Alvarez issued correspondence attaching the Landmark expert report of Jennifer Teliga, dated May 16, 2017, and rejecting the proofs of loss received for buildings A, B, and D, and recommending only partial repair(s) to Building C.[50] Because Landmark never provided a POR, let alone a reasonable one, it breached the insurance contract and Riverside lost, and continues to loose, business income as a result. Furthermore, Landmark specifically instructed Riverside not to perform any repairs, until it completed its investigation – which was not completed until Landmark denied the majority of Riversides' claim on May 16, 2017. This now, further, represents consequential damages (discussed below) that Riverside is now entitled to recover.

Accordingly, this Honorable Court should deny Defendant's Motion for Partial Summary Judgment as a matter of law.

### E.    *Riversides' Claim for Lost Business Opportunity is Recoverable as a Matter of Law And Not Excluded Under the Policy*

---

[47] See, March 16, 2017 letter from David Alvarez to Rich Stein ("This letter acknowledges receipt of the Proofs of Loss, along with estimates received. However, until our investigation and evaluation regarding actual loss and damage sustained has been completed, we are unable to accept or reject any or all of the statements contained in the said Proofs of Loss."

[48] See April 11, 2017 email correspondence from David Alvarez, attached hereto as ***Appendix T***.

[49] See May 16, 2017 email from David Alvarez, attached hereto as ***Appendix U***.

[50] See May 17, 2017 correspondence from David Alvarez, attached hereto as ***Appendix V***.

Landmark contends that no legal basis exists to support Plaintiffs' lost business opportunity claim. This is untrue. There is Florida decisional authority suggesting that in appropriate circumstances, such as the circumstances herein, an insured may recover consequential damages when its insurer's breach of contract causes the insured's business to fail. See *Travelers Ins. Co. v. Wells*, 633 So. 2d 457 (Fla. 5th DCA 1993), *as clarified* (Mar. 18, 1994), as clarified (Mar.  18, 1994). Landmark argues that damage for breach of an insurance contract is limited to paying the loss suffered by the insured, which is recoverable under the insurance policy. Although that is normally the measure of damages for breach of an insurance contract, it is not exclusive. Consequential or resulting collateral damage may also be recovered if it can be sufficiently proved. It is possible to recover damages sustained by the wronged party, not because of the occurrence of the contingency which should have been insured against, but because of the breached contract, such as lost profits. *Glades Oil Co., Inc. v. R.A.I. Mgmt., Inc.*, 510 So. 2d 1193 (Fla. 4th DCA 1987). In cases such as this one, where a business loses a potential business opportunity, such as the sale of the Property anticipated profit is the correct measure of damages. *Travelers Ins. Co.*, 633 So. 2d at 461–62, as clarified (Mar. 18, 1994).

Further, one Florida Court recently expanded on this acknowledged law in the State of Florida, stating that an insurer can be held responsible for consequential damages from a simple breach of the insurance contract. *Manor House, LLC v. Citizens Prop. Ins. Corp.*, 277 So. 3d 658, 661 (Fla. 5th DCA 2019), *reh'g denied* (June 17, 2019), *reh'g denied* (Aug. 2, 2019), *review granted,* SC19-1394, 2019 WL 4915441 (Fla. Oct. 4, 2019).

Florida common law recognizes consequential damages as a breach of insurance contract action remedy independent of any bad faith claim (common law or statutory). *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*, 94 So. 3d 541 (Fla. 2012). See also, *Martin v. Monarch*

14

*Life Ins. Co.*, 94-1182-CIV-T-17E, 1995 WL 127157, at *1 (M.D. Fla. Mar. 21, 1995); *Trident Hosp. Florida, Inc. v. Am. Econ. Ins. Co.*, 608CV289ORL22GJK, 2008 WL 11334515, at *2 (M.D. Fla. May 30, 2008). Florida federal courts followed this rule when a first-party bad faith claim did not exist. *T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1527–28, 1531 (11th Cir. 1985) n.11.And, Florida federal courts continue to follow this rule. *Rondolino v. Northwestern Mut. Life Ins. Co.*, 788 F.Supp.553, 555 (M.D. Fla. 1992); *Essex Builders Group, Inc. v. Amerisure Ins. Co.*, 485 F. Supp. 2d 1302, 1306–07 (M.D. Fla. 2006) (citing *Travelers Ins. Co.*, 633 So. 2d 457; *Marram Corp. v. Scottsdale Ins. Co.*, 218CV204FTM38MRM, 2018 WL 3729044, at *2 (M.D. Fla. Aug. 6, 2018). Thus, as an insured under the Landmark Policy, Plaintiffs' measure of damages for breach of contract includes consequential damages for loss of business opportunity.[51]

Landmark also errs in arguing that consequential damages are excluded under the policy for damages. As related to Plaintiffs' loss of business opportunity, Landmark concedes that Plaintiffs' lost business opportunity claim "is not business income coverage contemplated by the policy."[52] "Business opportunity loss" and business income (interruption) loss are separate and do not overlap.[53] The exclusion for consequential damages referenced and relied upon by Landmark is specifically limited  under "Special Exclusions" to "Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, or Extra Expense Coverage Form."[54]  Landmark further concedes that  Mr. Sincore's "Lost Business Opportunity and Loss of Business Income claims are separate and distinct."[55] In his expert report

---

[51] And ongoing loss of business income discussed in Part D, above.
[52] Landmark Motion for Partial Summary Judgment at p. 14 of 26.
[53] Depo. Tr. of John Sincore at p. 38, Lines 3-7, attached hereto as ***Appendix W***.
[54] RSUI Policy Coverage Form CP 10 30 06 07, p. 4 of 10.
[55] RSUI Motion for Partial Summary Judgment at p. 15 of 26.

regarding lost business opportunity, Mr. Sincore expressly opines that Plaintiffs lost business opportunity "is the sum of the lost equity in the amount of $1,942,828 and estimated loss on return of investment using the average cap rate of 9.01% in the amount of $175,049 for a total estimated business opportunity loss of $2,117,877." Plaintiffs agree with Landmark that this analysis is sperate and distinct from and does not represent Plaintiffs separate business income loss. Accordingly, the "special exclusion" of consequential damages to business income loss does not apply to the consequential damages sustained by Plaintiffs related to their business opportunity loss.

Accordingly, this Honorable Court should deny Defendant's Motion for Partial Summary Judgment as a matter of law.

F.     **_Riverside is Not Precluded From Recovering Damages on a Replacement Cost Basis, and Limited Only to Pursue the Actual Cash Value of Unrepaired Damage_**

The subject policy is a "Replacement Cost" policy.[56] A "replacement cost policy" is a policy where the insurer agrees to compensate for a loss without considering depreciation; such a policy does not prohibit repairing the damaged property.

*Prepared Ins. Co. v. Gal*, 209 So. 3d 14 (Fla. 4th DCA 2016). In *Trinidad*, 121 So. 3d 433, the Florida Supreme Court examined the language of § 627.7011, Fla. Stat. Ann. (2008), considered the legislative intent, and concluded that "it is immaterial in a replacement cost policy whether the damaged structure is replaced or repaired." "Instead, the statute requires the insurer in all cases to pay the replacement costs of the covered loss...." The court also ruled that the parties' insurance policy did not authorize the insurer to withhold payment until the insured actually incurred the expenses, and that a contrary interpretation of the policy would contravene §

---

[56] See Policy "Commercial Property Coverage Part Declarations" under "Optional Coverages," Form RSG 40001 1203.

627.7011, Fla. Stat. Ann. *Id.* at *8. See also, *Haynes v. Universal Prop. & Cas. Ins. Co.*, 120 So. 3d 651, 654 (Fla. 1st DCA 2013); *GSG Holding, Inc. v. QBE Specialty Ins. Co.*, 1:15-CV-23385-UU, 2016 WL 8793342 (S.D. Fla. June 27, 2016). Moreover, just recently a Florida Court recognized the incongruity of the argument Landmark is making, i.e. that it may enforce the terms of the contract, even after breaching It. *Citizens Prop. Ins. Corp. v. Tio*, 45 Fla. L. Weekly D641 (Fla. 3d DCA Mar. 18, 2020). § 627.7011, Fla. Stat. Ann. would be rendered meaningless if Landmark were permitted in this case to deny coverage, not pay any (or all required) insurance benefits and then seek to limit Riverside at trial from presenting evidence of *all* the damages resulting from Landmark's breach. This cannot be the result the Florida Legislature intended in adopting § 627.7011, Fla. Stat. Ann. Florida courts have held that insurance carriers are initially obligated to pay the true amount of the ACV, not just the insurance company's estimate of the ACV, and this obligation exists regardless of whether the policyholder intends to use the money to make repairs to their home. *Vazquez v. S. Fid. Prop. & Cas., Inc.*, 230 So. 3d 1242 (Fla. 3d DCA 2017); *Siegel v. Tower Hill Signature Ins. Co.*, 225 So. 3d 974 (Fla. 3d DCA 2017); *Francis v. Tower Hill Prime Ins. Co.*, 224 So. 3d 259 (Fla. 3d DCA 2017); and *Milhomme v. Tower Hill Signature Ins. Co.*, 227 So. 3d 724, 725 (Fla. 3d DCA 2017).

Accordingly, this Honorable Court should deny Defendant's Motion for Partial Summary Judgment as a matter of law.

### G. <u>*Riverside is Not Precluded from Recovering Increased Cost of Construction Damages*</u>

Similar to its argument that Landmark is not entitled to pay replacement costs value, despite breaching the insurance contract, it offers the equally unavailing argument that Riverside is not entitled to in Increased Cost of Construction Damages, because Riverside has been unable to complete the necessary repairs at the subject property over the last two years, due to

Landmark's breach. Here, Riverside incorporates its arguments in section D and F, above, in that Landmark failed/refused to provide a POR, while stringing Riverside along and advising they could not make any repairs until Landmark completed its investigation; and on the same day Landmark completed its investigation while never providing a POR consistent with the policy, it denied the majority of Riversides' claim, thus resulting in a breach of the insurance contract. Landmark cannot now take advantage of its breach to argue that because of its delay, Riverside failed to make repairs within in the two-year contractual period for increased cost of construction and, therefore, is no longer entitled to that coverage.

Accordingly, this Honorable Court should deny Defendant's Motion for Partial Summary Judgment.

### H. *Riverside is Not Precluded from Recovering for the Cost Associated with Replacing the Building C Roof*

This argument by Landmark is a complete red-herring, and unsupported by any applicable law. Prior to the loss, Riverside contracted with G&G Roofing Construction, Inc. to replace the roof to Building C.   The replacement of the Building C roof was required due to leaking issues from the roof into Building C.[57] According to Plaintiffs' corporate representative, as well as Mr. Flickenger of G&G Roofing, a portion of the replacement of the Building C roof was completed at the time Hurricane Matthew affected the insured property.[58]   None of the portion of the Building C roof that was replaced by G&G Roofing prior to Hurricane Matthew was damaged as a result of the storm. However, the portion of the roof, in excess of 60%, that had not been replaced prior to Matthew was damaged and subject to wind uplift and, as a result, allowed water intrusion into building C.[59] And, despite its argument on summary judgment, Landmark did, in fact pay for a

---

[57] Stipulation of Agreed Material Facts for Purposes of Summary Judgment at ¶ 7. [Doc No. 84].
[58] *Id.* at ¶ 8.
[59] Declaration of Bonnie E. Reinberg, ***Appendix A***.

portion of the roof replacement to Building C., but breached its obligation to match the remaining portion and pay for same. Moreover, Landmark has never raised this as a coverage defense prior to summary judgment, likely because there is no Florida law supporting it.

Accordingly, this Honorable Court should deny Defendant's Motion for Partial Summary Judgment as a matter of law.

I.  **_Landmark is Not Entitled to Summary Judgment Pertaining to Riversides' Claim of Breach of Contract Due to the Nonrenewal of the Policy_**

The subject policy provides:

*This Endorsement Changes The Policy. Please read it Carefully*

**FLORIDA CHANGES[60] – CANCELLATION AND NONRENEWAL**

The following conditions are added and supersede any provisions to the contrary:

Hurricane Matthew occurred on October 6, 2016. § 627.4133, Fla. Stat. Ann. provides:

d)1.    Upon a declaration of an emergency pursuant to s. 252.36 and the filing of an order by the Commissioner of Insurance Regulation, an insurer may not cancel or nonrenew a personal residential or commercial residential property insurance policy covering a dwelling or residential property located in this state which has been damaged as a result of a hurricane or wind loss that is the subject of the declaration of emergency for a period of 90 days after the dwelling or residential property has been repaired. A structure is deemed to be repaired when substantially completed and restored to the extent that it is insurable by another authorized insurer that is writing policies in this state.

On October 3, 2016 then Florida Governor Rick Scott issued Executive Order Number 16-230 declaring an emergency for 60 days pursuant to § 252.36, Fla. Stat. Ann..[61] Governor Scott extended that Order for 60 days per Executive Order Number 16-274.[62] In total the State of Florida Emergency Order related to Hurricane Matthew spanned October 3, 2016 to approximately January 31, 2017. Landmark issued its Notice of Nonrenewal to Riverside on

---

[60] Again, indicating that Florida law governs this contract dispute.
[61] See Executive Order Number 16-230, attached hereto as **_Appendix X_**.
[62] See extension Order attached hereto as **_Appendix Y_**.

October 31, 2016 to be effective December 19, 2016.[63] Landmark's Corporate representative, Jonna Holm, testified that insurance companies, like Landmark, should not violate state orders issued by the Governor during an emergency such as a hurricane.[64] Landmark's other Corporate representative for underwriting purposes, Zhanna Seglie, confirmed that had the State of Florida in fact had an Emergency Order in place on October 31, 2016 and Landmark issued a Nonrenewal to Riverside at that time, it would have constituted a violation of the Order issued by the State of Florida.[65] Ms. Holm also previously testified that the Florida statutes are incorporated into the subject policy, and if not complied with by RSUI results in RSUI breaching the insurance contract.[66]

Accordingly, there are more than questions of fact on this issue that defeat summary judgment. There is affirmative evidence from two Landmark Corporate representatives that issuing a Notice of Nonrenewal during the existence of a State of Florida Emergency Order is a violation of that Order(s), and violation of that Order(s) is also a violation of the Florida Statutes governing the subject insurance policy and, therefore, is a breach of contract.

**J.** *Riverside is Entitled to Recover Attorney's Fees Pursuant to § 626.9373, Fla. Stat. Ann. Because Florida Law Does Apply to this Dispute.*

Florida law applies to this matter – not Georgia law. As such, Plaintiffs are entitled to attorney's fees pursuant to § 626.9373, Fla. Stat. Ann. Fla. Stat. for Defendant's breach of the subject insurance policy. Accordingly, this Honorable Court should deny Defendant's Motion for Partial Summary Judgment as a matter of law.

---

[63] See Notice of Nonrenewal, attached hereto as ***Appendix K***.
[64] Depo. Tr. of Jonna Holm (Vol II) at p. 231, Lines 6-10, ***Appendix H***.
[65] Depo. Tr. of Zhanna Seglie, at p. 51, Lines 18-25, ***Appendix M***.
[66] Depo. Tr. of Jonna Holm (Vol II) at p. 130, Lines 4-19, ***Appendix H***.

CONNICK LAW, LLC

/s/ Thomas J. Connick, Esq.
**THOMAS J. CONNICK, ESQ.**
Ohio Bar No.:  0070527 (*Admitted Pro Hac*)
tconnick@connicklawllc.com
25550 Chagrin Blvd Suite 101
Beachwood OH  44122
Telephone:  216-364-0512
Facsimile:  216-609-3446

JANSSEN, SIRACUSA & KEEGAN PLLC

/s/ Joseph W. Janssen, III, Esq.
**JOSEPH W. JANSSEN, III, ESQ.**
Florida Bar No.:  166067
jjanssen@jasilaw.com
120 South Olive Avenue, Suite 504
West Palm Beach, FL  33401
Telephone: 561-420-0583
Facsimile: 561-420-0576

*Attorneys for Plaintiffs,*
*Riverside Apartments of Cocoa, LLC, et al.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of July 2020, the foregoing was filed electronically, and that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Thomas J. Connick
Thomas J. Connick (0070527)
*Attorney for Plaintiffs*