### IN THE UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

CASE NO.: 6:18-CV-1639-Orl-40DCI

RIVERSIDE APARTMENTS OF COCOA,
LLC, *et al.*,

    Plaintiffs,

v.

LANDMARK AMERICAN INSURANCE
COMPANY,

    Defendant.

_____/

**DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S OMNIBUS MOTION FOR PARTIAL SUMMARY JUDGMENT**

COMES NOW, the Defendant, LANDMARK AMERICAN INSURANCE COMPANY ("LANDMARK"), and files its Reply to Plaintiffs' Response in Opposition to Defendant's Omnibus Motion for Partial Summary Judgment (D.E. # 85), pursuant to Fed. R. Civ. P. 56(c).

**LANDMARK'S RESPONSE TO RIVERSIDE'S ADDITIONAL DISPUTED FACTS**[1]

Paragraphs 7 and 15 in RIVERSIDE's response are undisputed. The following paragraphs are undisputed to the extent specified and otherwise disputed: *Paragraph 1*: Undisputed that Bonnie Reinberg is RIVERSIDE's Corporate Representative, otherwise, disputed; *Paragraph 2:* Undisputed that Jeff Cohen is one of RIVERSIDE's brokers, otherwise,

---

[1] RIVERSIDE's response is not in compliance with the Court's Scheduling Order [D.E. 32] at *8, which requires the party opposing summary judgment to "provide pinpoint citations to the pages and lines of the record supporting each material fact. General references to a deposition are inadequate." At times, RIVERSIDE makes general references without pinpoint citations to materials attached to its response. LANDMARK requests that this Court disregard the Declarations of Bonnie Reinberg and Jeff Cohen as sham affidavits, designed solely to create genuine issues of material fact regarding LANDMARK's arguments on the Business Opportunity Claim, Attorney's fees claim, and Choice-of-Law. *See Gonzalez v. PNC Bank, N.A.*, No. 617CV543ORL40DCI, 2018 WL 4924341, at *4, n.13 (M.D. Fla. Oct. 10, 2018) (*citing Van T. Junkins & Assoc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir.1984)). The suspect nature of these declarations is compounded by the fact that that they were created and notarized after LANDMARK filed its summary judgment motion. Alternatively, LANDMARK requests an opportunity to provide additional briefing on the issue.

disputed; *Paragraph 4:* Undisputed that Mr. Canterna, while in Ohio, dealt directly with LANDMARK to procure an insurance policy for RIVERSIDE, on RIVERSIDE's behalf, otherwise, disputed;[2] *Paragraph 6*: Undisputed that the property was inspected by the Florida Department of Business and Professional Regulation on June 12, 2017, otherwise, disputed; *Paragraph 8*: Undisputed that Fran Nichols, as RIVERSIDE cites, provided testimony about damage to the property, otherwise, disputed; *Paragraph 14*: Undisputed that there was damage to the Roof of Building C, after Hurricane Matthew, and that RIVERSIDE had engaged G & G Roofing to repair said roof prior to Hurricane Matthew, but those repairs were not completed prior to the date of loss, otherwise, disputed.

The following paragraphs in RIVERSIDE's response are disputed: *Paragraph 3*: Disputed. Mr. Canterna procured the policy for RIVERSIDE. According to Mr. Cohen's Declaration, Mr. Canterna sought out the policy at Mr. Cohen's direction,[3] Mr. Cohen never had direct contact with LANDMARK,[4] and Mr. Canterna had to seek the approval of Mr. Cohen with respect to the quote of insurance.[5] *Paragraph 5*: Disputed. RIVERSIDE's Exhibit C to its Response has no labeling or other designation that it is from the State of Florida. Presuming the exhibit's veracity, the text of the exhibit describes itself as a "snapshot," and does not recount the full breadth of the inspection. Additionally, the deposition testimony of Ms. Nichols only states that sealant was used in July of 2016, she does not state whether such repairs were actually performed. *Paragraph 9*: Disputed. *Paragraph 10*: Disputed. *Paragraph 11*: Disputed.[6]

---

[2] Cohen Declaration at ¶¶ 2-3; 8-9.
[3] Plaintiffs' Response at Exhibit B, Declaration of Jeff Cohen, at ¶¶ 2-3 ("Cohen Declaration").
[4] Cohen Declaration at ¶ 8.
[5] Cohen Declaration at ¶ 9; *see also* the Parties Stipulation of Agreed Material Facts for Purposes of Summary Judgment [D.E. 84] at ¶¶ 2-5.
[6] Mr. Canterna requested that Ms. Seglie bind coverage on December 9, 2015. Seglie Dep. 54:14-23, Exhibit 1 to Deposition, pg. 18. Exhibit "C" to D.E. 63.

*Paragraph 12*: Disputed, RIVERSIDE does not cite to any Record evidence to support this fact.

*Paragraph 13*: Disputed, RIVERSIDE does not cite to any Record evidence to support this fact.

## I.   *LEX LOCI CONTRACTUS* REQUIRES GEORGIA SUBSTANTIVE LAW APPLY.

RIVERSIDE argues that Florida law applies because the policy is a Florida Surplus Line Insurance Policy and contains other Florida specific language. This argument lacks merit. In *CNL Hotels & Resorts, Inc. v. Houston Casualty Co.,* 505 F.Supp.2d 1317 (M.D. Fla. 2007), this Court, applying *lex loci contractus*, found that the following facts were <u>not relevant</u> to its choice of law analysis, to the determination of where the contract was executed, and where the last act necessary to complete it occurred: (1) the policy was delivered in Florida; (2) the insured's principal place of business was Florida; (3) the insurer was licensed in Florida; (4) <u>the policy contained riders specific to Florida</u>; and (5) that taxes were paid on the premiums in Florida.[7]

RIVERSIDE next argues that under Florida's choice-of-law rules, *lex loci contractus* applies in contract matters unless a statute modifies or abrogates a choice-of-law rule. RIVERSIDE implies that §626.913(2), Fla. Stat. abrogated *the lex loci contractus* rule. However, in order to abolish or limit the common law rule, the Legislature "must indicate such change clearly, or else the rule of common law stands."[8] Section 629.913, Fla. Stat. does not clearly specify such intention, therefore, the statute does not have that effect.[9]

Equally without merit is RIVERSIDE's argument that Florida law applies to the interpretation of the policy because LANDMARK is bound by a legal conclusion made by Ms.

---

[7] *Id.* at 1320-21.
[8] *Pastor v. Union Cent. Life Ins. Co.*, 184 F.Supp. 2d 1301, 1307 (S.D. Fla. 2002), *aff'd*, 128 Fed. Appx. 100 (11th Cir. 2005) (citing *Wal-Mart Stores, Inc. v. McDonald*, 676 So. 2d 12, 17 (Fla. 1st DCA 1996)).
[9] *Compare Sanchez v. Sanchez De Davila*, 549 So. 2d 943, 945 (Fla. 3d DCA 1989) (where Legislature made such intent clear in §655.55, Fla. Stat. by including the following language "[t]he law of this state . . . shall govern all aspects . . . regardless of the citizenship, residence, location, or domicile of any other party); *see also Pastor*, 184 F.Supp. 2d at 1307 ("If the Florida legislature had intended to abandon the *lex loci contractus* rule for insurance disputes, it could have done so by stating that the Code would apply in 'any civil action for damages filed in the courts of this state,' . . . or that the "law of this state" would govern all aspects of insurance, regardless of the place of the execution of the contract.").

Holm during her deposition. A Rule 30(b)(6) deponent's own interpretation of the facts or legal conclusions does not bind the entity that designated the deponent. *See Snapp v. United Transp. Union*, 889 F.3d 1088, 1104 (9th Cir. 2018); *see also S. Wine & Spirits of Am., Inc. v. Div. of Alcohol & Tobacco Control*, 731 F.3d 799, 811 (8th Cir. 2013) ("A 30(b)(6) witness's legal conclusions are not binding on the party who designated him[.]") Furthermore, the fact that LANDMARK's policy contains Florida-specific language and that it is required to comply with Florida law when issuing a policy in Florida, does not dictate that Florida substantive law applies to contract interpretation.[10]

RIVERSIDE next contends that LANDMARK has waived the choice-of-law argument by not raising at the time it moved to dismiss, on procedural grounds, the bad faith count. The *CNL* Court considered and rejected a similar argument.[11] However, "under the traditional choice of law principles the law of the forum state governs on matters of procedure, such as bifurcation of causes of action." *Id.*; *see also Siegel v. Novak,* 920 So. 2d 89, 94 (Fla. 4th DCA 2006) ("Substantive law generally relates to the rights and duties of a cause of action, while procedural law involves the machinery for carrying on the suit."). LANDMARK's Motion to Dismiss, D.E. 19, argued that RIVERSIDE's bad faith action was premature and warranted dismissal. Its procedural argument only concerned the bifurcation of RIVERSIDE's causes of action. *Sun Life Assurance Co. of Can. v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1208 (11th Cir. 2018) (choice-of-law is timely raised if in the first motion or response when choice-of-law matters).

Finally, RIVERSIDE's argument for the application of Ohio law is based on the incorrect assumptions that the wholesale broker, Mr. Canterna, was LANDMARK's agent and that the last act in the formation of the policy was when Mr. Canterna relayed the insurance quote to

---

[10] *See CNL Hotels & Resorts* at 1320-21 (finding it irrelevant that the policy contained riders specific to Florida). The determination of which state's substantive law applies turns on where the contract is formed. *Id.*
[11] *Id.* at 1322.

RIVERSIDE's insurance agent, Mr. Cohen. RIVERSIDE's contention that Mr. Canterna is LANDMARK's agent is unfounded.[12] Under both Florida and Georgia law, a wholesale broker is considered the agent of the insured during the application process for property insurance, absent "special circumstances" indicating a different relationship.[13] The Florida Supreme Court explained the difference between a broker for the insured and an agent for the insurer as follows: the former acts as a middleman between the insured and the insurer, shops the market, and then places coverage with an insurer selected by the insured, while the latter "represents the insurer under an exclusive employment agreement."[14] Mr. Canterna was clearly RIVERSIDE's broker acting as a middleman between RIVERSIDE and LANDMARK given that he negotiated the policy for RIVERSIDE with Ms. Seglie, and because Ms. Seglie never dealt with Mr. Cohen.[15] Furthermore, Mr. Canterna sought out the policy at Mr. Cohen's direction and needed Mr. Cohen's approval for the insurance quote.[16] The last act necessary to complete the policy was performed in Georgia, when Ms. Seglie, communicated acceptance of Mr. Canterna's offer to purchase insurance by issuing temporary binders in Georgia.[17]

---

[12] RIVERSIDE supports this allegation with a statement by their insurance broker, Mr. Cohen. However, that statement is a legal conclusion without any factual support to establish an actual agency relationship between LANDMARK and Mr. Canterna. Ms. Seglie testified that Mr. Canterna was RIVERSIDE's agent, as he was the only person who negotiated the policy on RIVERSIDE's behalf. Seglie Dep. 108:15-110:16.

[13] *See, e.g.*, *Landmark Am. Ins. Co. v. Moulton Properties, Inc.*, 440 Fed. Appx. 788, 793 (11th Cir. 2011) ("Under Florida law, an insurance broker employed to procure insurance is presumed to act as an agent for the insured unless 'special circumstances' indicate that a different relationship existed."); *Lima Delta Co. v. Glob. Aerospace, Inc.*, 752 S.E.2d 135, 140 (Ga. Ct. App. 2013) (under Georgia law, "independent agents or brokers are generally considered the agent of the insured, not the insurer) (citation omitted).

[14] *Essex Insurance Co. v. Zota*, 985 So. 2d 1036, 1046 (Fla. 2008).

[15] Seglie Dep. 110:9-15.

[16] Cohen Declaration at ¶¶ 2-3, 8-9. This is a classic example of a wholesale broker acting on behalf of the insured. RIVERSIDE fails to provide any supporting authority for the argument that the last act in the formation of the policy was when Mr. Canterna relayed the insurance quote to Mr. Cohen.

[17] LANDMARK's position is amply supported by case law. *See, e.g., Wausau Underwriters Ins. Co. v. Danfoss, LLC,* No. 2:14-CV-14420, 2015 WL 6456569, at *8 (S.D. Fla. Oct. 26, 2015) (The last act necessary for the formation of an insurance contract is "'an insurer's (or its agent's) communication of acceptance of the insured's (or its agent's) offer to purchase insurance,' by issuing a temporary 'binder.'"); *Prime Ins. Syndicate, Inc. v. B.J. Handley Trucking, Inc.,* 363 F.3d 1089, 1093 (11th Cir. 2004) (same); *Sun Capital Partners, Inc. v. Twin City Fire Ins. Co., Inc.,* No. 12-CV-81397-KAM, 2015 WL 4648617, at *4 (S.D. Fla. Aug. 5, 2015) (same).

## II. THE POLICY LIMITS RECOVERY FOR LOST RENTAL VALUE.

RIVERSIDE contends that since the policy contains limits for rental value for Buildings 1, 2, and 3, RIVERSIDE is entitled to the coverage amounts from the limits of the buildings whose units were not damaged by Hurricane Matthew simply because RIVERSIDE's claim for rental value for Building 3 exceeds the applicable limit for Building 3.[18] Recovery under an insurance policy cannot exceed the amount for which the property is insured.[19] The Policy unambiguously states that the Limit for Rental Value for Building 3 is $162,600.00, thus, RIVERSIDE's rental value claim cannot exceed that amount.[20] Finally, it is undisputed that RIVERSIDE has only made a claim for Rental Value for the damaged units in Building 3.[21] Thus, RIVERSIDE can only recover the rental value for the sole building to which its claim was made – Building 3.

## III. RIVERSIDE CANNOT RECOVER FOR A LOST BUSINESS OPPORTUNITY.

RIVERSIDE's claim for a lost business opportunity is not recoverable as it seeks to recover its inability to realize the income of a failed hypothetical sale.[22] First, RIVERSIDE did not plead any claim for lost business opportunity in the operative complaint.[23] RIVERSIDE's

---

[18] Plaintiffs' Response at 11 [D.E. 85]. It is undisputed that the policy provides specific and not blanket coverage.

[19] *Durden v. State Farm Fire & Cas. Co.*, 238 F. Supp. 3d 1370, 1378 (N.D. Ga. 2017) (*citing Donaldson v. Pilot Life Ins. Co.*, 177 Ga.App. 748, 341 S.E.2d 279, 280 (1986) ("Where the language fixing the extent of coverage is unambiguous . . . and but one reasonable construction is possible, this court must enforce the contract as written."); § 175:11. Express monetary limit, generally, 12 Couch on Ins. § 175:11. RIVERSIDE neither cites to any authority in support of this position, nor attempts to distinguish the authority cited by LANDMARK.

[20] Defendant's Motion for Partial Summary Judgment, at 13 [D.E. 63]; Policy, Form RSG 40001 1203, pg. 1 of 1.

[21] Plaintiffs' Response in Opposition, Exhibit L, Economic Damages Report prepared by John Sincore; Sincore Dep. 28:13-20; Reinberg Dep. 130:10-25. RIVERSIDE does not argue in its response that is making a claim for rental value for any building other than Building 3. Instead, RIVERSIDE devotes a substantial amount of energy towards the argument that there is a dispute as to the length of the period of restoration. Plaintiffs' Response, at 11-13. The Parties do not agree on this point, but it is irrelevant as to the issue at hand.

[22] Sincore Dep. 48:25-49:1-2.

[23] Not only is RIVERSIDE's claim for lost business opportunity not pled in the Complaint, but Ms. Reinberg was not aware of this loss of equity or opportunity until RIVERSIDE disclosed Mr. Sincore's expert report. At no point did Ms. Reinberg testify about this lost opportunity or the resulting damage RIVERSIDE suffered. The same can be said for Mr. Sincore. *See* Sincore Dep. 48:25-49:1-2. RIVERSIDE now proffers the "Declaration of Bonnie E. Reinberg," which states between June 2016 and November 2019, Ms. Reinberg was approached by three individuals regarding her interest in selling the property. Reinberg Declaration at ¶ 6. Coverage was bound on December 9,

reliance on *Travelers Ins. Co. v. Wells*, for the proposition that an insured may recover consequential damages when its insurer's breach of contract causes the insured's business to fail, is misplaced.[24] In *Wells*, plaintiffs owned and operated a saw mill, and contracted with Travelers to provide workers compensation insurance. Travelers refused to renew Wells' policy because of unpaid premiums. Without this policy, the Wells could not retain their non-family workforce and had to operate the saw mill at a reduced capacity, which resulted in lost profits. The Wells ultimately recovered $75,000.00 against Travelers, and $50,000.00 against their agent. The Fifth Circuit found a lack of competent evidence to support the award of damages.[25]

Here, RIVERSIDE contends that, despite being issued over $500,000.00, in insurance proceeds, RIVERSIDE was unable to repair the property so that it could sell the property despite the fact that there was never a prospective buyer interested in the property.[26] Moreover, RIVERSIDE does not assert that the inability to sell the property was reasonably foreseeable to the parties at the time of contract formation.

---

2015. Note 6, *supra*. A claim for damages based upon the inability to sell the property was not even contemplated by RIVERSIDE until just before it disclosed its experts. RIVERSIDE cannot be allowed to recover on this claim now.
[24] Plaintiffs' Response at 14, citing *Travelers Ins. Co. v. Wells*, 633 So. 2d 457 (Fla. 5th DCA 1993), as clarified (Mar. 18, 1994).
[25] *Wells*, So. 2d 457, 457-61.
[26] RIVERSIDE, albeit implicitly, argues for the application of the doctrine of prevention of performance to preclude summary judgement on the issues of replacement cost, increased cost of construction, and the cost of the Building C roof. However, applying the doctrine in this case would impermissibly rewrite the policy based on the theory that it would be too costly for RIVERSIDE to comply with the policy. *See Buckley Towers Condo., Inc. v. QBE Ins. Corp.*, 395 Fed. Appx. 659, 663 (11th Cir. 2010) ("Inconvenience or the cost of compliance [with contractual terms], though they might make compliance a hardship, cannot excuse a party from the performance of an absolute and unqualified undertaking to do a thing that is possible and lawful."); *see also Oriole Gardens Condo. Ass'n I, v. Aspen Specialty Ins. Co.*, 875 F. Supp.2d 1379, 1384-85 (S.D. Fla. 2012) (acknowledging that the *Buckley Towers* Court rejected the same "prevention of performance" argument). While not binding on Georgia courts, the reasoning in these cases demonstrate support for the strict application of replacement cost provisions. Indeed, Georgia courts have upheld replacement cost provisions. *See Grand Reserve of Columbus, LLC v. Prop.-Owners Ins. Co.*, No. 4:15-CV-53 (CDL), 2017 WL 2859811, at *2 (M.D. Ga. Jan. 9, 2017) (finding that under the policy, making repairs was a condition precedent to recovering the full replacement cost); *BSF, Inc. v. Cason*, 175 Ga. App. 271, 333 S.E.2d 154 (1985) (denial of coverage does not waive conditions requiring the insured to replace or repair property before receiving complete replacement costs); *Marchman v. Grange Mut. Ins. Co.*, 232 Ga. App. 481, 500 S.E.2d 659 (1998) (noting that financial inability was not a sufficient excuse for the non-performance of a condition precedent to replacement cost coverage).

RIVERSIDE also cites to *Manor House*.[27] The *Manor House* Court opined that lost rent, the typical income for an apartment complex, is recoverable as consequential damages where the policy does not provide for recovery of the same and the purported breach is the cause of the lost rent.[28] While there is a substantial connection between an apartment complex and the rent it earns by leasing its apartment units to tenants, the same cannot be said, for the income earned from the sale of an apartment complex, or in this case, the lost equity not realized from a hypothetical sale of an apartment complex. RIVERSIDE misrepresents that the cases it cites assert that Florida common law recognizes consequential damages as a remedy for the breach of an insurance contract independent of any common law or statutory bad faith claims.[29]

Finally, RIVERSIDE argues that the policy exclusion for consequential damages under the Business Income form is inapplicable to RIVERSIDE's claim for lost business opportunity because (1) this claim is separate and distinct from the lost rent claim; and (2) because the lost opportunity claim is not itself business income, the special exclusion of consequential damages cannot apply to the opportunity claim because the exclusion is limited to the business income form.[30] RIVERSIDE cannot have it both ways: rely on authority analogizing its claim for lost

---

[27] *Manor House, LLC v. Citizens Prop. Ins. Corp.,* 277 So. 3d 658 (Fla. 5th DCA 2019), *reh'g denied* (June 17, 2019), *reh'g denied* (Aug. 2, 2019), *review granted,* SC19-1394, 2019 WL 4915441 (Fla. Oct. 4, 2019). The policy in *Manor House* only provided coverage for property damage, but not for lost rent. *Id.*

[28] *Id.* The Fifth DCA's holding is based on the premise that parties can "contemplate" remedies outside the policy's express terms. *Manor House* is currently on appeal before the Florida Supreme Court. The Florida Supreme Court has rejected the argument that the relationship of the parties to an insurance policy is governed by anything other than the policy language. *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*, 94 So. 3d 541 (Fla. 2012) (specifically declining to adopt the doctrine of reasonable expectations in the context of insurance contracts, concluding that construing policies under this doctrine can only lead to uncertainty and unnecessary litigation).

[29] None of the cases stand for this proposition. *See QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.,* 94 So. 3d 541, 547 (Fla. 2012) (does not state asserted proposition); *Martin v. Monarch Life Ins. Co.*, 94-1182-CIV-T-17E, 1995 WL 127157, at *1 (M.D. Fla. Mar. 21, 1995) (same); *Trident Hosp. Florida, Inc. v. Am. Econ. Ins. Co.*, 608CV289ORL22GJK, 2008 WL 11334515, at *2 (M.D. Fla. May 30, 2008) (same); *T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1527–28, 1531 (11th Cir. 1985) n.11 (same); *Rondolino v. Northwestern Mut. Life Ins. Co.*, 788 F.Supp. 553, 555 (M.D. Fla. 1992) (same); *Marram Corp. v. Scottsdale Ins. Co.*, 218CV204FTM38MRM, 2018 WL 3729044, at *2 (M.D. Fla. Aug. 6, 2018) (same); *Essex Builders Group, Inc. v. Amerisure Ins. Co.*, 485 F. Supp. 2d 1302, 1306–07 (M.D. Fla. 2006) (same; holding that destruction of insured's business, resulting from insurers' refusal to pay project owner's claim, was not within parties' contemplation at time policies were issued).

[30] Plaintiffs' Response at 15-16.

business opportunity to those cases awarding lost profits (a crucial component of the Business Income Coverage form),[31] yet claim that the policy provisions do not apply to the Lost Opportunity Claim because it is not Business Income. Any consequential loss stands apart from a covered loss. To say that the exclusion for consequential damages does not apply to the lost business opportunity, a loss RIVERSIDE has maintained is a consequence of the instant claim[32] because that claim is not a part of Business Income would render the provision meaningless.[33] Plaintiffs' claim for "anticipated profit" as a result of a purported lost sale of the Property is precisely the type of consequential damage meant to be excluded by the Policy.

## IV. RIVERSIDE CANNOT RECOVER REPLACEMENT COST, INCREASED COST OF CONSTRUCTION, OR COST OF REPLACING THE BUILDING C ROOF.

LANDMARK is entitled to Partial Summary Judgment on Count II of RIVERSIDE's Third Amended Complaint. RIVERSIDE's sole argument in opposition rests on its invocation of various Florida cases to assert that §627.7011, Fla. Stat., requires LANDMARK to pay the full amount of Replacement Cost Value for repairs to the damaged property prior to RIVERSIDE incurring the expense. Even assuming Florida law applied, RIVERSIDE's cited authority is inapposite, as each deals with homeowners policies and §627.7011, Fla. Stat., which only applies to homeowners' policies.[34] LANDMARK, a surplus lines insurer, is exempt from Chapter 627 generally and this statute specifically.[35]

---

[31] *See* Plaintiffs' Response at 14 ("In cases such as this one, where a business loses a potential business opportunity, such as the sale of the Property <u>anticipated profit</u> is the correct measure of damages") (emphasis added).
[32] Sincore Dep. 47:22-25; 48:1-21; Reinberg Declaration at ¶¶ 9-11.
[33] In ascertaining the parties' intention, a court must ". . .'consider the insurance policy as a whole' and seek a construction that 'will give effect to each provision, attempt to harmonize the provisions with each other, and not render any of the policy provisions meaningless or mere surplusage.'" *Ace Am. Ins. Co. v. Wattles Co.*, 930 F.3d 1240, 1253-54 (11th Cir. 2019) (applying Georgia law) (citation omitted).
[34] Sec. 627.7011(5)(a), Fla. Stat. ("This section does not . . . [a]pply to policies not considered to be "homeowners' policies," as that term is commonly understood in the insurance industry.").
[35] *The Jacqueline Norris Huggett v. Ironshore Specialty Ins. Co.*, No. 18-21467-CIV, 2018 WL 8359643, at *5 (S.D. Fla. July 18, 2018) (*citing* § 626.913(4), Fla. Stat., stating that surplus lines carriers are exempt from § 627.7011).

The damages RIVERSIDE seeks are for repairs that have not been performed in the four years since the date of loss. Despite having been issued over $500,000.00, in insurance proceeds, RIVERSIDE has not yet completed the repairs within a reasonable time not to exceed two years. Thus, in accordance with the policy, increased cost of construction coverage is precluded.[36]

Despite choosing to replace the Building C Roof prior to Hurricane Matthew, RIVERSIDE now seeks the full value of its replacement. RIVERSIDE claims that because LANDMARK issued payment for a portion of the roof, LANDMARK is now obligated to match the balance of what was to be repaired. Affording any additional coverage would result in a windfall to RIVERSIDE since it had already determined that the roof had no value and had become contractually liable for replacing the roof.[37]

## V. THE NONRENEWAL OF THE POLICY DOES NOT AMOUNT TO BREACH.

RIVERSIDE argues LANDMARK breached the policy because it issued its notice of non-renewal before the close of the state of emergency set out by Executive Orders 16-230 and 16-274. RIVERSIDE argues that the answers to RIVERSIDE's counsel's hypothetical questions to Ms. Holm and Ms. Seglie, during their depositions, creates a genuine issue of material fact precluding summary judgment. Assuming that Florida, and not Georgia, law applied, §627.4133(2)(d), Fla. Stat., does not apply to LANDMARK, a surplus lines insurance carrier.[38]

---

[36] LANDMARK's Motion at 18-19; (CP 00 10 06 07, pg. 3-5 of 15.).
[37] RIVERSIDE cites no authority in response to LANDMARK's motion pertaining to Building C, nor attempts to distinguish the authority cited by LANDMARK as to RIVERSIDE's lack of pecuniary interest.
[38] *See Essex Ins. Co. v. Integrated Drainage Sols., Inc.*, 124 So. 3d 947 (Fla. 2d DCA 2013); *see also QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*, 94 So. 3d 541, 550 (Fla. 2012) (finding that the statute does not provide for either a private cause of action or a penalty for a violation of its requirements). Notably, RIVERSIDE's response falls fatally short as it does not asset, much less establish, any damages resulting from the nonrenewal.

BUTLER WEIHMULLER KATZ CRAIG LLP

/s/ Troy J. Seibert, Esq.
**TROY J. SEIBERT, ESQ.**
Florida Bar No.: 0084668
tseibert@butler.legal
**WILLIAM R. LEWIS, ESQ.**
Florida Bar No.: 0879827
wlewis@butler.legal
**SCOTT J. FRANK, ESQ.**
Florida Bar No.: 0775606
sfrank@butler.legal
Secondary: msmalls@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida 33602
Telephone: (813) 281-1900
Facsimile: (813) 281-0900
*Attorneys for Defendant,*
*Landmark American Insurance Company*

**CERTIFICATE OF SERVICE**

I certify that a copy hereof has been furnished to:

Joseph W. Janssen, III, Esq.
John M. Siracusa, Esq.
Janssen, Siracusa & Keegan PLLC
120 South Olive Avenue, Suite 504
West Palm Beach, FL 33401
jjanssen@jasilaw.com; jsiracusa@jasilaw.com
Secondary: kmaska@jasilaw.com
Attorneys For: Riverside Apts of Cocoa, LLC
fka Riverside Apts Ltd. & Equity Planning Corp.

Thomas J. Connick
Connick Law, LLC
25550 Chagrin Boulevard, Suite 101
Beachwood, OH 44122
tconnick@connicklawllc.com
Attorneys For: Riverside Apts of Cocoa, LLC
fka Riverside Apts Ltd. & Equity Planning Corp.

by CM/ECF on August 3, 2020.

/s/ Troy J. Seibert, Esq.
**TROY J. SEIBERT, ESQ**